[No. 14401.  In Bank.—January 3, 1894.]

## D. H WULZEN, APPELLANT, v. THE BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO, RESPONDENT.

CERTIORARI—OPENING AND EXTENSION OF STREET—ASSESSMENT—DISTRICT LEGISLATION.—The proceedings of the board of supervisors of the city and county of San Francisco, under the statute of March 6, 1889 (Stats. 1889, p. 70), in passing a resolution of intention to open and extend Market street to the Pacific ocean, and in declaring the exterior boundaries of the district to be affected thereby, are legislative in character, and *certiorari* will not lie to review them.

ID.—LEGISLATIVE FUNCTIONS NOT REVIEWABLE.—A writ of review or *certiorari* will not lie to review the action of an inferior tribunal or board

in the exercise of purely legislative functions which are not judicial in their character.

ID.—NOTICE OF PUBLIC WORK—CONSTITUTIONAL LAW.—The notice of public work and its mode of service by posting and publication, required by the statute of March 6, 1889 (Stats. 1889, p. 70), are not violative of any inherent or constitutional right of the persons to be affected thereby, and amount to due process of law.

ID.—"DUE PROCESS OF LAW" DEFINED—SETTLED MAXIMS OF LAW.—The term " due process of law," in its broad sense, signifies such an exercise of the powers of the government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe.

ID.—SUFFICIENCY OF NOTICE—ASSESSMENT AND TAXATION.—In judging what is due process of law, the sufficiency of the notice must be determined in each case from the particular circumstances of the case in hand, respect being had to the cause and object of the taking. In matters of assessment and taxation the same character of notice is not required as in ordinary actions in a court of justice.

ID.—PERSONAL SERVICE OF PROCESS.—In matters of taxation and assessment, the state is not bound to accord personal service of process upon the citizen.

ID.—EMINENT DOMAIN—LEGISLATIVE QUESTION—POWER OF COURT.—The determination as to whether or not the right of eminent domain shall be exercised, and as to what lands are necessary to be taken in the exercise of that right, is a political and legislative question, and not a judicial one. If the use is a public use, the power of the court is confined to seeing that the burdens cast upon the citizen are in conformity with the methods prescribed by the legislature, and that those methods are not in conflict with the fundamental rights of the people.

ID.—ORDER OF SUPERVISORS CONDEMNING LAND—JUDICIAL ACTION—EXCESS OF JURISDICTION.—Order No. 2319 of the board of supervisors of the city and county of San Francisco, purporting to open and extend Market street to the ocean, and declaring that all the land within its exterior boundaries, as extended, "is hereby condemned, appropriated, acquired, set apart, and taken for public use," is judicial in its nature in so far as it purports to condemn the land described, and to that extent is in excess of the jurisdiction of the board.

ID.—DISTINCTION BETWEEN LEGISLATIVE AND JUDICIAL ACT.—A legislative act is one which predetermines what the law shall be for the regulation of future cases falling under its provisions, while a judicial act is a determination of what the law is in relation to some existing thing done or happened. Whenever an act determines a question of right or obligation or of property as the foundation upon which it proceeds, such an act is to that extent judicial.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion of the court.

*J. C. Bates*, for Appellant.

*Pierson & Mitchell*, for Respondent.

The COURT.—The appellant here filed his petition in the court below to obtain a writ of review under section 1068 of the Code of Civil Procedure, to annul a certain order of the board of supervisors of the city and county of San Francisco (a copy of which marked "Exhibit C" is made a part of the petition), which purported on its face to take and condemn petitioner's land with that of many others, for an alleged public use, in the extension of Market street in a general southwesterly direction from its present terminus to the Pacific ocean.

The order sought to be brought under review follows the resolution of intention of the board (which is also set out at length in the petition and marked "Exhibit A"), and the portion thereof against which the objections of petitioner are more particularly directed, is as follows:

"SECTION 1.   Market street is hereby declared to be an open public street of the city and county of San Francisco, from its present termination at its intersection with Castro and Seventeenth streets, thence southwesterly and westerly, with a uniform width of one hundred and twenty feet to low-water mark of the waters of the Pacific ocean.

"The said street, as extended, embracing all the land included in the boundaries hereinafter described, is hereby condemned, appropriated, acquired, set apart and taken for public use, except those portions of said lands included therein, and now held by the city and county as open public streets or highways."

The petition avers that no compensation was made to petitioner for his land taken, and also that it is not and never has been for the public use or convenience, or necessary thereto, to open or extend said Market street, and specifies reasons for this conclusion.

An order requiring defendant to show cause why a writ of review should not be allowed issued, in answer

CI. CAL.—2

to which defendant appeared and for cause answered, "that the proceeding sought to be reviewed herein was not and is not a judicial act, but was and is a legislative act, and not the subject of review on a writ of *certiorari."*

Upon a hearing the court below sustained the position taken by defendants, and denied the writ, and dismissed the petition. From the judgment petitioner appeals.

It is admitted on all hands that *certiorari* does not lie to review the action of an inferior tribunal or board in the exercise of purely legislative functions which are not judicial in their character. (*People* v. *Oakland Board of Education,* 54 Cal. 375; *Myers* v. *Hamilton,* 60 Cal. 289; *Williams* v. *Supervisors of Sacramento County,* 65 Cal. 160; *Bixler* v. *Supervisors of Sacramento County,* 59 Cal. 698; *People ex rel McDonald* v. *Bush,* 40 Cal. 344.)

At the oral argument much stress was laid by counsel for appellant upon the insufficiency of the notice provided by the statute to be given to the owners of property to be affected by the improvement.

The position taken was not that the notice must be due process of the law in the strict sense of the term, as defined in proceedings taken in the courts, but that it must be its equivalent, with only such modification as the nature of the proceedings and the surroundings render necessary. Justice Bradley, in discussing what is due process of law in *Davidson* v. *New Orleans,* 96 U. S. 97, uses the following language:

"In judging what is due process of law, respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or none of these, and if found to be suitable or admissible in the special case, it will be adjudged to be due process of law; but, if found to be arbitrary, oppressive and unjust, it may be declared to be not due process of law."

In commenting upon the above quotation in *Lent* v. *Tillson,* 72 Cal. 414, Temple, J., says: "In other words, the sufficiency of the notice must be determined in each case from the particular circumstances of the case in

hand.    And further, in matters of assessment and taxation, the same character of notice is not required as in ordinary actions in a court of justice, for the reason, I presume, that in such summary proceedings it is not practicable or usual."

In the present case the statute of March 6, 1889 (Statutes 1889, p. 70), under which the proceedings were taken, requires that before ordering any work done or improvement made, as authorized by section 1 of the act, the city council shall pass a resolution of intention to do the work or make the improvement, describing the work or improvement and the land deemed necessary to be taken therefor, and specifying the boundaries of the district to be affected or benefited by the improvement, and to be assessed to pay expenses.    Notices are required to be posted upon the contemplated improvement not more than three hundred feet apart, and not less than three in any case, which shall be headed in letters of not less than one inch in length, " Notice of Public Work," and shall contain notice of the passage of the resolution of intention, its date, and briefly the work or improvement proposed, "and refer to the resolution for further particulars."

A like notice is required to be published for ten days in a daily newspaper (if any) published and circulated in the city where the work is to be done, etc.    Within ten days after completion of publication, all parties in interest objecting may file their objections, when a day for hearing their objections must be fixed, the parties objecting notified, and a hearing had, and if the objections are sustained, all proceedings are stopped; if overruled, or if no objections are filed, the council is deemed to have acquired jurisdiction to order the work done or improvement made.

The notice was given by posting and publication as prescribed by the statute.

The terms *due process of law* or *due course of law* or *law of the land*, all of which signify the same thing, are

sometimes defined as " *law in its course of administration through courts of justice.*"

As applied to judicial proceedings, this definition is concise and precise, but in a broader sense the term signifies such an exercise of the powers of the government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs.

Administrative process, it has been said, of the customary sort, is as much *due process of law* as judicial process. To settle the question as applied to a given state of facts, we have but to examine the previous condition of things in use, and regarded as essential to the protection of the rights of the individual under such circumstances, and if in substantial compliance with such essentials, the course prescribed may be said to be in consonance with the law of the land, and to constitute *due process of law*.

The power of taxation is confided to the legislative department of the government and " an act for levying taxes and providing the means of enforcement is within the unquestioned and unquestionable power of the legislature. It is, therefore, the law of the land not merely in so far as it lays down a general rule to be observed, but in all the proceedings and all the process which it points out or provides for in order to give the rule full operation." (Cooley on Taxation, pp. 48, 49.) It was said in *Kelly* v. *Pittsburg*, 104 U. S. 80: "Taxes have not, as a general rule, in this country since its independence, nor in England before that time, been collected by regular judicial proceedings. The necessities of government, the nature of the duty to be performed, and the customary usages of the people, have established a different procedure, which, in regard to that matter, is and always has been *due process of law*."

The burden sought to be laid upon property holders in this case is not, it is true, taxation in the strict sense of the term. (*Hagar* v. *Supervisors of Yolo*, 47

Cal. 234.)   It is an assessment for a local, for a muni-
cipal, improvement which is sought in the proceedings
under review; but in principle it is in most respects
subject to like considerations with cases of taxation.

The determination as to whether or not the right of
eminent domain should be exercised and as to what
lands are necessary to be taken in the exercise of that
right, is a political and legislative question and not a
judicial one.   Its determination rests exclusively with
the legislature, or with such subordinate legislative
bodies as it may be properly devolved upon, and the
question of whether the exercise of the power is wise
or not is one with which the judicial department has
no concern.   The question as to whether a given use is
in fact a public use may be inquired into by the courts,
but that question determined in the affirmative, as it
must be here, and the power of the court is confined to
seeing to it that the burdens cast upon the citizen are
in conformity with the methods prescribed by the legis-
lature and that those methods are not in conflict with
the fundamental rights of the people.   (*Gilmer* v. *Lime
Point*, 18 Cal. 257; *Contra Costa C. M. R. R. Co.* v. *Moss*,
23 Cal. 324; *Davies* v. *Los Angeles*, 86 Cal. 37; *In re
Fowler*, 53 N. Y. 62; *People* v. *Smith*, 21 N. Y. 505.)

In the case last cited it was said: "The necessity for
appropriating private property for the use of the public
or of the government is not a judicial question.   The
power resides in the legislature.   It may be exercised
by means of a statute, which shall at once designate the
property to be appropriated and the purpose of the ap-
propriation, or it may be delegated to public officers,
or, as it has been repeatedly held, to private corpora-
tions established to carry on enterprises in which the
public is interested.   There is no restraint upon the
power, except that requiring compensation to be made.
And where the power is committed to public officers, it
is a subject of legislative discretion to determine what
prudential regulations shall be established to secure a
discreet and judicious exercise of the authority."

We think the consensus of opinion, the weight of authority, is to the effect that in a case like the present the legislative authority would have a perfect right, without any notice to the parties to be affected by its action, in the absence of a statute requiring notice, to open up Market street, and determine the district to be affected thereby, the latter of which was done and upheld in the case of the widening of Dupont street. (*Lent* v. *Tillson*, 72 Cal. 404.) In that case it was said, in substance, that the parties affected had no constitutional right to be heard until the assessment was made.

The notice in the present case is made necessary by the act under which the council received its authority, and was in accord with the requirements of the act, and was as specific and certain as is practical under such circumstances, and was substantially such as has been approved in many cases in this state and elsewhere. To require such a notice to name all the persons to be affected, and to be served upon them personally, would, for a variety of reasons, require an impossibility.

We are of opinion, therefore:

1. That the proceedings of the council in passing the resolution of intention and in declaring the exterior boundaries of the district to be affected by the contemtemplated improvement were legislative in character.

2. In matters of taxation and assessment the state is not bound to accord personal service of process upon the citizen.

3. That the notice and the mode of its service was in obedience to the requirements of the statute, and not violative of any inherent or constitutional right of the persons to be affected thereby, and hence in accord with the law of the land, and amounted to *due process of law* in such a case.

No objections were filed, so far as appears, to the improvement or to the extent of the district of lands to be affected or benefited by such improvement, hence, under section 4 of the act, the council " is to be deemed to

have acquired jurisdiction to order any of the work to be done or improvements to be made."

Thereupon the city council passed the ordinance set out in the transcript, and marked C, which it is claimed by appellant was the exercise of judicial power, and in excess of the jurisdiction conferred upon the city council by the Act of March 6, 1889.

That order or ordinance (Order No. 2319) purports to be an order for " opening and extending Market street from its present termination in a southwesterly and westerly direction to the Pacific ocean." By section 1, " Market street is declared to be an open public street of the city and county of San Francisco, from its present termination at its intersection with Castro and Seventeenth streets, thence southwesterly and westerly with a uniform width of one hundred and twenty feet to low-water mark of the waters of the Pacific ocean."

The said street, as extended, embracing all the land included in the boundaries hereinafter described, *is hereby condemned, appropriated, acquired, set apart, and taken for public use,* except those portions of said lands " included therein and now held by the city and county as open public streets or highways, to wit": Then follows a description of the proposed street.

Section 2 names and appoints three commissioners to assess the benefits and damages resulting from the opening and extending the street, as provided for in resolution of intention, and to have and exercise general supervision of the proposed work and improvement until the completion thereof pursuant to the provisions of an act of the legislature, etc., describing the objects of the act approved March 6, 1889.   (Stats. 1889, p. 70, etc.)

The question presented is: 1. Was the act of the board of supervisors judicial in its character and effect? and if so,

2. Was it in excess of the jurisdiction conferred upon the board ?

The passage of ordinary resolutions for opening

streets in cities by the board of supervisors or city council, under the authority conferred by the act of March 6, 1889, and providing for commissioners, etc., is clearly, we think, a legislative act. A legislative act is said to be one which predetermines what the law shall be for the regulation of future cases falling under its provisions, while a judicial act is a determination of what the law is in relation to some existing thing done or happened. (*Mabry* v. *Baxter*, 11 Heisk. 690; *Sinking Fund Cases*, 99 U. S. 761.)

In the case last cited it was said: "Whenever an act undertakes to determine a question of right or obligation, or of property, as the foundation upon which it proceeds, such act is to that extent a judicial one, and not the proper exercise of legislative functions.

"Thus an act of the legislature of Illinois authorizing the sale of the lands of an intestate to raise a specific sum to pay certain parties their claims against the estate of the deceased for moneys advanced and liabilities incurred was held unconstitutional, on the ground that it involved a judicial determination that the estate was indebted to those parties for the moneys advanced and liabilities incurred. The ascertainment of indebtedness from one party to another, and a direction for its payment, the court considered to be judicial acts, which could not be performed by the legislature." (3 Scam. 238.)

Whenever an act determines a question *of right or obligation or of property* as the foundation upon which it proceeds, such an act is to that extent judicial.

The order in question went beyond the legislative function of declaring a street an open and public one. It purported to and condemned, appropriated, acquired, set apart, and took for public use all the land within the exterior boundaries of the street, except that already held by the city.

To condemn land is to set it apart or appropriate it for public use. To appropriate is to make a thing one's own, to make it the subject of property, to exercise do-

minion over an object to the extent and for the purpose of making it subserve one's own proper use or pleasure. To acquire is, in the law of contracts and descents, to become the owner of property; to make property one's own.

" To take signifies to lay hold of, and when applied to land implies to gain or receive into possession; to seize; to deprive one of the possession; to assume ownership.   Thus it is a constitutional provision that a man's property shall not be taken for public uses without just compensation." (Black's Law Dictionary, tit. Take.)

The terms used in this order are the usual and apt ones made use of in proceedings in the courts for the final condemnation of land under the exercise of the power of eminent domain.   They are not the usual expressions made use of in the exercise of legislative power; the jurisdiction of the board conceded, and the terms used, were sufficient to divest the title of the petitioner and vest it in the public, to appropriate the property to a public use.   It was the exercise of judicial power.   It will not do to say that the board of supervisors had no such power, and therefore we must presume that in the order they merely intended their action as preliminary to proceedings to condemn, should they become necessary.

The order in question speaks in no uncertain terms. It uses language capable of only one interpretation, and that as showing an intent to condemn the land indicated *in presenti*.

The order included not only a legislative expression of the will of the board adopting it that a street should be opened, but in addition thereto sought to perform the judicial act of taking the land of citizens, rendered necessary under the legislation involved in the order. To the extent which it sought to accomplish this last object it was judicial.

As to the action of the board, so far as judicial, being in excess of its jurisdiction, we entertain no doubt.

It is true that boards of supervisors, city councils,

and like local boards and commissions are not within the inhibition of section 1 of article III of our state constitution, and may be invested with powers belonging to either or all of the three departments of our government. (*People* v. *Supervisors*, 8 Cal. 60; *People* v. *Provines*, 34 Cal. 532; *Kimball* v. *Supervisors*, 46 Cal. 19.) The objection to that portion of the order is not simply that it seeks to exercise judicial power, but that it involves an exercise of such power not conferred by any statute, and in a manner which no statute can authorize. When land within a street is "condemned, appropriated, acquired, set apart, and taken for public use," it would seem that the last act in the series essential to vest in the public a right to its use as a thoroughfare is accomplished.

It is evidence not of an intention to take and condemn the land in the future as provided in the statute we have referred to, but of a present condemnation, segregation, and dedication to the use of the public.

It follows from these views that the court below erred in holding that the Order No. 2319 was and is not a judicial act, and the judgment of the court below is reversed, and the cause remanded.

BEATTY, C. J.—I concur in the judgment.

Rehearing denied.