[Civ. No. 6759. Third Dist. June 29, 1943.]

NATHANIEL LEFTRIDGE et al., Appellants, v. CITY OF SACRAMENTO et al., Respondents.

518

Albert E. Sheets, Anthony J. Kennedy and Carl Kuchman for Appellants.

Hugh B. Bradford, City Attorney, for Respondents.

THOMPSON, J.—The petitioners have appealed from an order of court discharging the preliminary writ of mandamus which was issued directing the Civil Service Board of the City of Sacramento to hear, determine and report to the city council the prevailing wages which were paid in that vicinity to employees who were engaged in the performance of services similar to those of petitioners who were a garbageman and a collector of refuse from the city streets, and when said prevailing wages had been ascertained that the city should pay petitioners at those rates. After notice and hearing by the civil service board, findings were adopted to the effect that no divergence existed in that vicinity with respect to prevailing wages of employees engaged in such similar occupations. The proceedings and conclusions of the board at that hearing were transcribed and filed in the superior court, both as a return to the petition and as a transcript of evidence for consideration of the court. That record on appeal, consisting of 320 pages, was certified to this court by the trial judge. Further oral and documentary evidence was taken by the trial court in the mandate proceeding on the subject of the prevailing rate of wages paid for similar

services in the vicinity of Sacramento. Thereupon the respondents were exonerated from failure to perform their respective duties, and the writ was discharged. From that order the petitioners have appealed.

The principal questions to be determined are whether the civil service board was warranted in classifying the services of the petitioners as "garbageman" and "pick-up man" as distinguished from "truckmen" or "dump-truck drivers," and if so, whether there was a divergence in the prevailing scale of wages in the vicinity of Sacramento between those classifications of employment. The further problem involved is whether the court may by means of mandamus try the question de novo regarding the divergence of prevailing wages.

The amended petition for a writ of mandamus was filed in the Superior Court of Sacramento County, October 30, 1939. It contains four separate causes of action. The first one alleges that Nathaniel Leftridge was employed by the city of Sacramento "driving and operating a dump truck and with the use of such dump truck collecting, removing, transporting, dumping and disposing of garbage;" that he was paid $131.30 per month of 26 days, or $5.05 per day, for his services, and that the prevailing wages in that vicinity which were paid to "garbage dump truck" men was the sum of eighty-five cents per hour. It is alleged the civil service board of that city failed and neglected to ascertain the prevailing wages which were paid to employees in that vicinity, engaged in the classes of work which are performed by the petitioners, and failed to report those rates to the city council as required by section 52 of the Charter of Sacramento (Stats. 1921, pp. 1919, 1938), and that the city council has refused to allow or pay said employees the prevailing wages to which they are entitled.

The second cause of action further alleges that said Nathaniel Leftridge is entitled to the unpaid portion of the prevailing wages of his class of employment, from April 17, 1939, at the rate of eighty-five cents per hour, aggregating the sum of $110.25, the payment of which was refused.

The third cause of action alleges that the petitioner, Chris Jacobsen, was employed by said city "driving and operating a dump truck, performing miscellaneous labor such as shoveling, cleaning up wreckage and debris from the streets" of Sacramento; that he was paid for said services $125.58 per

month of 21 days, or $5.98 per day, and that the prevailing wages paid to "Waste Removal Dump Truck" men in that vicinity was the sum of eighty-five cents per hour.

The fourth cause of action further alleges that said Chris Jacobsen presented for payment to the treasurer of said city his claim for the unpaid difference between his paid wages and the prevailing rate for such services in that vicinity, amounting to $42.09, which was refused.

The prayer asks for a writ of mandamus requiring the Civil Service Board of the City of Sacramento to "hold investigations to ascertain the prevailing scale of wages" in that vicinity which was paid to employees of the same classes of services in which the petitioners are engaged, and to report to the city council the result thereof, and that the city council shall thereupon fix, allow and pay to petitioners the prevailing wages so ascertained, as required by section 52 of the Charter of Sacramento. The petition further prays that the auditor and treasurer of said city be required to allow and pay petitioners the respective unpaid amounts of their wages thus ascertained and allowed.

A demurrer to the petition was overruled. The respondents answered the pleading, denying the material allegations of the petition. After a partial hearing the court issued a preliminary writ of mandamus directing the Civil Service Board of the City of Sacramento to forthwith hold an investigation to ascertain the prevailing scale of wages paid in that vicinity to men employed in performing services similar to those classes in which the petitioners were engaged, and to report the result of its investigation to the city council. The council was then directed to adjust, allow and pay the petitioners wages in accordance with such prevailing scales. The hearing of the petition was then continued and the respondents were directed to appear before the court on or before a specified date and file their return showing the result of their investigation. In response to that order the civil service board fixed October 10, 1940, and the City Hall in Sacramento as the time and place of conducting that investigation. Notice of that hearing was duly served on all interested persons, including the petitioners and their attorneys. At that hearing oral and documentary evidence was adduced in behalf of both parties. Numerous reports and signed questionnaires regarding the subject of prevailing wages were filed by scores of individuals and many firms who were en-

gaged in and about Sacramento in trucking and in services similar to those which were performed by the petitioners.

Several letters were also received and filed with the board from officers of other cities regarding the scale of wages paid to garbagemen, dump-truck drivers and other employees of similar classes. The information was received chiefly from individuals and firms within the County of Sacramento who were engaged in collecting garbage, cleaning streets, hauling refuse, merchandise, materials, milk and products of various kinds, by means of trucks, drays, dump-trucks, and other vehicles. It appears that other than the city there was but one garbage firm which was engaged in that business in Sacramento County. The hearing before the board lasted for several days. At the conclusion of the evidence the matter was elaborately argued before the board and submitted for determination. The evidence and proceedings, together with the findings of the board on the subject of prevailing wages of similar classes of employees were transcribed and filed. In effect, the board determined that the classes of employment in which the petitioners were engaged were separate and distinct from those of "truck-drivers," or "dump-truck operators," and that there was no discrepancy in that vicinity between the wages which were paid to the petitioners and the compensation which was paid to workmen in other similar classes of employment, and that the petitioners were therefore not entitled to an increase of wages. The result of that hearing and investigation was transcribed and certified to the trial court and filed in this proceeding as a return to the petition and as an exhibit for the consideration of the court. That transcript, consisting of 320 pages, was authenticated by the trial judge as a part of the record on appeal. It contains specifications of the duties and qualifications, required by the civil service board, of employees of the city with respect to several classifications, including "garbagemen," "pick-up men," "dump-truck drivers" and "truckmen." The duties of these several classes differ materially. Several obvious distinctions, with respect to the duties and qualifications of these employees, exist between the classes to which the petitioners belong and those of a dump-truck driver or a drayman. For instance, the record shows that garbagemen are accompanied by helpers in canvassing their respective districts for the purpose of collecting garbage. They operate trucks equipped with automatic hoisting de-

vices. They are required to travel from door to door, and to carry by hand the garbage cans from the rear of the premises to the trucks stationed on the streets, and to then dump the contents in the trucks. The helpers then drive the vehicles to the adjoining house, while the garbagemen proceed to visit that back yard for other garbage receptacles. This process is repeated until the load is completed. The trucks are then driven to the point of disposal and the load dumped. The garbage cans weigh from fifty to ninety pounds. Sixty-five per cent of the working time of these men is consumed in procuring, carrying and dumping the cans. Only about thirty-five per cent of their time is consumed in driving the trucks for collecting and disposing of the garbage. In other words, the majority of their working time is employed in manual labor, and not in driving the trucks. Apparently no unusual skill in operating a motor vehicle is required. No mechanical skill in caring for their machines is necessary. On the contrary, truck drivers, according to the duties prescribed by the city, are engaged chiefly in driving their vehicles. They are required to possess enough mechanical skill to "clean, lubricate, and make minor operating repairs on their motor trucks." Their business is to drive the trucks and to haul materials, equipment, supplies and laborers for the benefit of the city. The specifications for that classification also require the truckman to possess an education equivalent to completion of the eighth grade, and to have had at least two years of successful experience in driving two-ton trucks. No reason is suggested why these classifications and the distinct duties and qualifications of each are not reasonable. They appear to be reasonable.

A similar situation exists with relation to the class of "pick-up men." Their chief duty is to collect grass and debris from the streets within prescribed districts. The driving of their trucks is unimportant compared with the manual labor required to collect and load the refuse matter. There appears to be satisfactory reason for separately classifying "pick-up men" for their line of duty.

 Section 43 of the charter confers upon the civil service board the authority to adopt rules for the selection and promotion of employees of the city. This provision authorizes that board to make reasonable classifications of workmen for the purpose of employment and promotion. The business of collecting and disposing of garbage within the boundaries of a city is certainly within the province of the municipality.

It is a well-established principle that authority may be delegated by the Legislature to administrative boards or officers to adopt and enforce reasonable rules and terms to carry out the general purpose of a statute, even though the delegated power confers a discretion or the necessity of determining terms, qualifications or conditions under which the board may act, so long as they come within the scope of the statute. (*Fillmore Union High School.Dist.* v. *Cobb*, 5 Cal.2d 26, 33 [53 P.2d 349]; 5 Cal.Jur. 683, sec. 97; *Mitchell* v. *McKevitt*, 128 Cal.App. 458, 461 [17 P.2d 789].) In 1 Cooley's Const. Lim., 8th ed., p. 231, it is said in that regard:

"Boards and commissions play an important part in the administration of our laws. The great social and industrial evolution of the past century, and the many demands made upon our legislatures by the increasing complexity of human activities, have made essential the creation of these administrative bodies and the delegation to them of certain powers. Though legislative power cannot be delegated to boards and commissions, the legislature may delegate to them administrative functions in carrying out the purpose of a statute and various governmental powers for the more efficient administration of the laws."

In the case of *Gaylord* v. *City of Pasadena,* 175 Cal. 433 [166 P. 348], at page 436, it is further said in that regard:

"It has become increasingly imperative that many *quasi*-legislative and *quasi*-judicial functions, which in smaller communities and under more primitive conditions were performed directly by the legislative or judicial branches of the government, are intrusted to departments, boards, commissions and agents. No sound objection can longer be successfully advanced to this growing method of transacting public business. These things must be done in this way or they cannot be done at all, and their doing, in a very real sense, makes for the safety of the republic, and is thus sanctioned by the highest law. For as the Supreme Court of the United States declares: 'Indeed, it is not too much to say that a denial to Congress of the right, under the Constitution, to delegate the power to determine some fact or the state of things upon which the enforcement of its enactment depends, would be "to stop the wheels of government" and bring about confusion, if not paralysis, in the conduct of the public business.' (*Union Bridge Co.* v. *United States,* 204 U.S. 364, [51 L.Ed. 523, 17 S.Ct. 367].)"

■ It is true that rules which are thus adopted and enforced must be reasonable in their application to the purpose for which the statute is enacted, and they must not be arbitrary or discriminatory. (*Martin* v. *Superior Court*, 194 Cal. 93 [227 P. 762]; 5 Cal.Jur. 823, secs. 188-193.) A determined classification is presumed to be reasonable and valid, and will be upheld unless it appears to be palpably arbitrary. (*Sequoia National Park Stages Co.* v. *Sequoia & General Grant National Parks Co.*, 210 Cal. 156, 162 [291 P. 208]; *In re Weisberg*, 215 Cal. 624 [12 P.2d 446].)

■ In the present case the prescribed qualifications and duties of a garbageman and a pick-up man do not appear to be unreasonable or arbitrary. The distinctions between such occupations and that of an ordinary dump-truck driver are apparent and important. In the latter pursuit it is ordinarily essentially and almost exclusively the duty of the drivers of trucks to operate their machines in transporting goods and materials. In the occupations of garbagemen and pick-up men it appears that their chief duties and the majority of their time is required to procure the garbage, carry the containers to their vehicles and to dump their contents or to shovel up and transfer the grass and debris from the streets to their machine. The reason for adopting the distinctions between the duties and qualifications of ordinary truck or dump-truck drivers and garbagemen or pick-up men is clearly within the purpose and spirit of section 43 of the Charter which authorizes the civil service board to adopt reasonable rules governing the selection and promotion of the employees of the city.

■ It is true that it was the duty of the civil service board to familiarize itself with the scale of wages paid for the classes of work performed by the employees of the city, and for that purpose to hold investigations to ascertain the prevailing wages in that vicinity paid for similar employment, when it was deemed necessary to do so. It is also true that when a divergence between the wages paid to city employees and the prevailing wages paid to other workmen in similar occupations in that vicinity was found to exist, it was the duty of the board to inform the city council of that fact, in which event it was the duty of the council to adjust its employees' wages to that prevailing scale. Section 52 of the charter so provides. It reads:

"It shall be the duty of the Civil Service Board to famil-

iarize itself with the scale of wages paid to all classes of employees both in and out of the City service, and for that purpose it shall, whenever it may be deemed necessary, hold investigations to ascertain the prevailing scale of wages. Whenever it shall be found that the City has diverged from such scale, the Board shall transmit, in writing, to the City Council notice of such divergence and it shall be the duty of the Council to adjust the wages paid to said prevailing scale.''

In view of the allegations of the petition in this proceeding it was entirely proper that the trial court should have issued the preliminary writ, as it did, directing the civil service board to hold an investigation pursuant to the preceding section of the charter to ascertain and report to the court its findings regarding the prevailing wages which were paid in that vicinity for services similar to those which were performed by the petitioners.

After due notice to the interested parties, that investigation was held. As a result of that hearing the board determined that no prevailing scale of wages existed in that vicinity which was at variance with the wages paid to the petitioners for the same class of work which they performed. It was therefore unnecessary for the board to make that report to the City Council. The proceedings and findings of the board upon that hearing were transcribed and filed in the mandamus proceeding as a return to the petition. Upon that return, and upon further hearing before the trial court, it was determined that the petitioners had no valid cause of action, and the writ was therefore discharged and the respondents were exonerated from all alleged dereliction of their respective official duties.

■ Mandamus is a proper remedy to compel a city council or a city civil service board to perform its mandatory duties prescribed by the charter. (*McAlpine* v. *Baumgartner*, 10 Cal.2d 409 [74 P.2d 753].) In the present case the writ was properly issued to require the civil service board to ascertain the prevailing scale of wages paid in the vicinity of Sacramento to employees performing the duties of the class of workmen to which the petitioners belong, pursuant to the provisions of section 52 of the Charter. ■ The writ, however, may not compel an officer or a board to perform the duties in a particular way. It will issue only to require the performance of ministerial duties. ■ The exercise of dis-

cretion on the part of such officer or board will not be interfered with in that proceeding except for arbitrary disregard of the law or for flagrant abuse of discretion. *(Mosesian* v. *Parker,* 44 Cal.App.2d 544, 548 [112 P.2d 705]; *Morales* v. *Ingels,* 30 Cal.App.2d 182 [85 P.2d 907]; 16 Cal.Jur. 809, sec. 28; 34 Am.Jur 859, sec. 70.) A discretion was conferred upon the Civil Service Board of Sacramento by section 43 of the charter to classify its employees for the purpose of ''selection and promotion.'' In so doing it had a right to prescribe reasonable duties and qualifications for employees in such classifications.

Numerous cases hold, and the rule is firmly established that mandamus may not serve the purpose of a writ of error even though no appeal or writ of error is granted by law. *(J. & W. C. Shull, Inc.* v. *Merced Irrigation Dist.,* 90 Cal.App. 270 [265 P. 965]; 16 Cal.Jur. 811, sec. 29; 34 Am. Jur. 842, sec. 50.) The right of appeal is statutory. None exists unless the Legislature sees fit to grant it. It is true that in the cases of *Standard Oil Co.* v. *State Board of Equalization,* 6 Cal.2d 557 [59 P.2d 119]; *Drummey* v. *State Board of Funeral Directors,* 13 Cal.2d 75 [87 P.2d 848]; *Laisne* v. *California State Board of Optometry,* 19 Cal.2d 831 [123 P.2d 457], and some other California cases, the office of extraordinary writs, such as certiorari and mandamus, appear to have been greatly extended contrary to the former prevailing rule. These cases hold that the trial court may hear de novo the proceedings which occur before inferior tribunals or boards *with state-wide jurisdiction.* This proceeding in mandamus does not involve proceedings of a statewide board. The modification of the former rule in that respect appears to be a radical departure from the former well established principle. It has led to much confusion. The effect of this change upon a vast, increasing bulk of litigation affecting the duties imposed by law upon inferior tribunals and boards is suggested in able articles appearing in 15 Southern California Law Review at page 391 and in 25 California Law Review at page 275. Three justices dissented from the majority opinion in the Laisne case. The case of *Bodinson Mfg. Co.* v. *California Employment Com.,* 17 Cal. 2d 321 [109 P.2d 935], which involved a state-wide board, is distinguished from the previously mentioned cases, on the ground that it was concerned with a question of law only and not with a review of the discretionary conclusions of a board

regarding the facts considered. The Bodinson case involved the construction of the statute to determine whether the board was legally authorized to pay unemployment wages to certain employees of an industry who were engaged in a sympathetic strike. At page 330 of that report the court said:

"The writ of *mandamus* may therefore be used in this state, not only to compel the performance of a ministerial act, but also in a proper case for the purpose of reviewing the final acts and decisions of statewide administrative agencies which do not exercise judicial power."

We do not understand the preceding language authorizes a trial de novo upon all questions in the Supreme Court or in a trial court upon a proceeding in mandamus. A trial of the facts of that case was not involved. The facts were settled by the pleadings. The court said in that regard:

"The question presented is one of *law*. We are not concerned here with the degree of finality which the legislature may have intended to confer upon the commission's determinations of *fact*."

In the present case the court in the mandamus proceeding tried de novo the question of prevailing wages. In addition to the transcript of proceedings before the civil service board which was filed in the trial court, additional oral evidence was adduced. Upon the record before the trial court it held there was no discrepancy between the prevailing wages paid in the vicinity of Sacramento to employees who were engaged in similar occupations and those received by the petitioners. The writ was therefore discharged.

The appellants, however, contend there is no conflict of evidence for the reason that it appears without dispute that dump-truck drivers received approximately 90 cents per hour for their services. That is true, but that fact is not conclusive of this proceeding. We may concede that the character of the vehicles used by the respective drivers was the same. But neither the duties nor the qualifications of such operators were the same, as we have previously stated. Sixty-five per cent of the working time of the petitioners was devoted to manual labor. They were not required to possess or exercise the same mechanical skill of ordinary dump-truck drivers. The court did not err in sustaining objections to evidence of the prevailing wages which were paid in that vicinity to dump-truck drivers, for the reason that they belonged to a different class of employees.

The findings and judgment are supported by substantial evidence.

The order discharging the writ is affirmed.

Peek, J., and Adams, P. J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 26, 1943.