[No. C002852. Third Dist. Oct. 28, 1988.]

PERRY DOMINEY et al., Plaintiffs and Appellants, v.
DEPARTMENT OF PERSONNEL ADMINISTRATION, Defendant
and Respondent;
DEPARTMENT OF JUSTICE, Real Party in Interest and
Respondent.

730

**COUNSEL**

Lanny T. Winberry and Giattina & Winberry Plaintiffs and Appellants.

Christine A. Bologna and Kenneth R. Hulse for Defendant and Respondent and for Real Party in Interest and Respondent.

**OPINION**

**PUGLIA, P. J.**—Plaintiffs, 48 current and former special investigators and senior special investigators with the Department of Justice's Medi-Cal Fraud Unit (MCFU), appeal from the judgment denying their first amended petition for writ of mandamus. By that petition, plaintiffs sought to compel the respondent Department of Personnel Administration (DPA) (1) to award them backpay for work they allegedly performed "out of class" and (2) to reclassify their positions to that of special agents, or to order DPA to grant them a rehearing. The trial court treated the hearing provided by DPA as quasi-legislative, rather than quasi-adjudicative, and thus reviewed DPA's decision under the arbitrary and capricious standard of review. Plaintiffs contend the trial court should have applied the more exacting de novo standard of review because (1) the DPA proceeding was quasi-adjudicative and (2) the hearing concerned fundamental vested rights. To the extent the DPA hearing dealt with plaintiffs' claim for backpay, we agree it was quasi-adjudicative and implicated fundamental vested rights. We shall therefore reverse the judgment in part.

I

On October 30, 1981, plaintiffs filed a grievance with the State Personnel Board in which they claimed, "The special investigators in the Medi-Cal

Fraud Unit are currently working out of class." The grievance requested "reclassification of all investigators within the Medi-Cal Fraud Unit from, the special investigator series, to the special agent series." Soon thereafter, the Legislature transferred the authority to review out-of-class claims from the State Personnel Board to DPA. (Gov. Code, §§ 19816, 19818, 19818.6, 19818.16; further statutory references to sections of an undesignated code are to the Government Code.)

On November 12, 1985, DPA conducted a hearing on the grievance. Counsel for the MCFU special investigators and senior special investigators (hereafter MCFU investigators) explained it was their position they were performing duties comparable to that of special agents and were entitled to reclassification and backpay as remedies.[1] Counsel introduced documentary evidence and the testimony of several MCFU investigators in support of plaintiffs' position. In addition, evidence was introduced showing that both the federal government—which pays 75 percent of the MCFU investigators' salaries—and the Department of Justice supported plaintiffs' claim. No evidence was offered to rebut their claim.

On January 21, 1986, DPA issued its decision denying plaintiffs' out-of-class claim. DPA reviewed a number of documents contained within its file which were not introduced at the grievance hearing. DPA reasoned that although the MCFU investigators' tasks are similar to those of some of the special agents, the MCFU investigators are not performing the full range of special agent duties in that they (1) are not cross-trained to perform a broad range of law enforcement duties as are special agents, and (2) do not provide training, technical assistance and coordination to local law enforcement agencies.[2] Thus, DPA concluded plaintiffs are not working out of class as special agents.

On February 20, 1986, plaintiffs petitioned DPA for rehearing. Plaintiffs attached to their petition a number of documents indicating MCFU investigators have provided training and coordination to local law enforcement agencies. The petition for rehearing was denied.

---

[1] Special investigators and senior special investigators are employed throughout the state government in various departments. In 1972, the Department of Justice incorporated the special investigators in its civil law, criminal law and special operations divisions into one class denoted "special agents." In 1978, the MCFU investigators were transferred from the Department of Health Services to the Department of Justice due to federal funding requirements. Thus, the MCFU investigators are now the sole special investigators within the Department of Justice.

[2] The evidence offered at the grievance hearing showed the MCFU investigators receive the same training as Department of Justice special agents, with the exception that only special agents receive narcotics training.

Plaintiffs filed their first amended petition for writ of mandate on August 19, 1986. Plaintiffs contended DPA violated their right to due process by considering materials which were not introduced at the grievance hearing, thus precluding their right to rebut contradictory evidence. In addition, plaintiffs contended DPA abused its discretion in that its decision was not supported either by the weight of the evidence or by substantial evidence.

The trial court denied the petition by order of April 27, 1987. That order refers to the court's tentative decision of January 14, 1987, in which the court reasoned DPA acted in a quasi-legislative capacity when it reviewed plaintiffs' out-of-class grievance. The court reasoned plaintiffs were requesting DPA to reclassify them and formulate a new policy to encompass their job duties, rather than asking DPA to award relief under existing rules: "[Plaintiffs'] contention that they sought [DPA] to apply existing classification criteria (Government Code section 19818.6) to their situation, does not take into account that the only means for relief was the creation of a new classification policy. Accordingly, a quasi-legislative action was undertaken by the agency."

Because the trial court concluded the DPA hearing was quasi-legislative, the court treated the petition as one for traditional, rather than administrative, mandamus and concluded DPA did not act in an arbitrary or capricious manner. Finally, the court rejected plaintiffs' contention they had been denied due process, reasoning that an agency acting in a quasi-legislative capacity may consider public information, such as its own file, even though the information was not introduced at the hearing. Judgment was entered in DPA's favor on June 3, 1987.

## II

As a prerequisite for review by administrative mandamus, the administrative decision must be one made in a proceeding in which a hearing is required by law. (Code Civ. Proc., § 1094.5, subd. (a).) DPA has jurisdiction over two matters relevant to our analysis: (1) "allocation of a position to a class" (§§ 19818.6, 19818.20), and (2) backpay for out-of-class work. (§ 19818.16, subd. (a).)[3] DPA must conduct hearings regarding all matters

---

[3] Section 19818.6 provides: "The department shall administer the Personnel Classification Plan of the State of California including the allocation of every position to the appropriate class in the classification plan. The allocation of a position to a class shall derive from and be determined by the ascertainment of the duties and responsibilities of the position and shall be based on the principle that all positions shall be included in the same class if: (a) The positions are sufficiently similar in respect to duties and responsibilities that the same descriptive title may be used.

(b) Substantially the same requirements as to education, experience, knowledge, and ability are demanded of incumbents.

related to its jurisdiction. (§ 19815.4, subd. (e); see also § 18670; *Webb* v. *State Personnel Board* (1971) 16 Cal.App.3d 542, 547 [94 Cal.Rptr. 115] [employee entitled to hearing on allocation of his position].)

■ DPA argues it lacks the authority to promote employees to a higher classification to remedy a claim of out-of-class work because to do so would destroy the fundamental civil service requirements of examination, certification and appointment by statute. (See *Pinion* v. *State Personnel Board* (1938) 29 Cal.App.2d 314, 319 [84 P.2d 185]. See also *Ligon* v. *State Personnel Bd.* (1981) 123 Cal.App.3d 583, 590-591 [176 Cal.Rptr. 717]; *Snow* v. *Board of Administration* (1978) 87 Cal.App.3d 484, 489 [151 Cal.Rptr. 127]; *Otto* v. *Reardon* (1937) 21 Cal.App.2d 260 [69 P.2d 185].) However, none of the authorities and nothing in the statutes prohibit DPA from reallocating the plaintiffs' *positions* to the class of special agent, leaving it to the incumbent plaintiffs to compete for the reclassified positions. This is precisely one of the remedies sought by plaintiffs. Moreover, DPA clearly has the authority pursuant to section 19818.16, to award backpay for out-of-class work for up to one year prior to the date the employee filed a claim. (See *ante,* fn. 3.)

### III

■ We next consider the question on which the appeal turns, whether the DPA hearing was quasi-legislative or quasi-adjudicative. Review of quasi-legislative determinations is by ordinary mandamus (Code Civ. Proc., § 1085) under the arbitrary and capricious standard, while review of quasi-adjudicative decisions is by administrative mandamus (Code Civ. Proc., § 1094.5) under either the substantial evidence or the independent judgment standard. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 140-144 [93 Cal.Rptr. 234, 481 P.2d 242].)

■ "Generally speaking, a legislative action is the formulation of a rule to be applied to all future cases, while an adjudicatory act involves the actual application of such a rule to a specific set of existing facts." (*Strum-*

---

"(c) Substantially the same tests of fitness may be used in choosing qualified appointees.

"(d) The same schedule of compensation can be made to apply with equity."

Section 19818.20 provides: "Reasonable opportunity to appeal shall be provided by the department to any employee affected by the allocation or reallocation of his or her position."

Subdivision (a) of section 19818.16 provides: "Notwithstanding Sections 905.2, 19818.8, and 19823, the department shall have the authority to review employee claims for additional reimbursement for the performance of duties outside the scope of their present classification and to authorize additional reimbursement for those duties. The department shall award employee claims under this section for a period no greater than one year preceding the filing of a claim."

*sky, supra,* at p. 35, fn. 2, citing *Wulzen* v. *Board of Supervisors* (1894) 101 Cal. 15, 24 [35 P. 353], and *Smith* v. *Strother* (1885) 68 Cal. 194, 196-198 [8 P. 852], overruled on another ground in *Millholen* v. *Riley* (1930) 211 Cal. 29, 35-36 [293 P. 69].) In *Smith* v. *Strother,* the court addressed the question (68 Cal. at pp. 196-197): "What constitutes the distinction between a legislative and judicial act?" and responded: "The former establishes a rule regulating and governing the matters or transactions occurring after its passage. The other determines rights or obligations of any kind, whether in regard of persons or property concerning matters or transactions which already exist and have transpired ere the judicial power is invoked to pass on them. . . . We have found no more accurate statement of the difference between a legislative and a judicial act than that expressed by Justice Field in his opinion in the Sinking Fund Cases. [¶] 'The distinction,' says the learned justice, 'between a judicial and a legislative act is well defined. The one determines what the law is, and what the rights of parties are, with reference to transactions already had; the other provides what the law shall be in future cases arising under it. ▮▮▮▮ Whenever an act undertakes to determine a question of right or obligation, or of property, as the foundation on which it proceeds, such act is to that extent a judicial one, and not the proper exercise of legislative functions.' (99 U. S. 761.)"[4]

Stated another way, legislative facts are " 'facts which help the tribunal determine the *content of law* and of policy and help the tribunal to exercise its judgment or discretion in determining what course of action to take' " while adjudicative facts are " 'facts concerning the immediate parties—who did what, where, when, how, and with what motive or intent . . . .' " (2 Davis, Administrative Law Treatise (1958) § 15.03, p. 353, quoted in *Southern Pacific Transportation Co.* v. *State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 957, fn. 18 [237 Cal.Rptr. 191].)

▮ "The cases also hold that the classification of an administrative decision as adjudicatory or legislative does not depend on the nature of the decision-making body [citation], the procedural characteristics of the administrative process [citations], or the breadth or narrowness of the admin-

---

[4] Whether an administrative action is quasi-legislative or quasi-adjudicative is a question of law. Generally, there should be no factual dispute whether the administrative agency is creating a new rule for future application or is applying an existing rule to existing facts. Thus, DPA's contention is wrong that plaintiffs' failure to obtain a statement of decision requires us to uphold the trial court's "finding" that DPA acted in a legislative capacity. Although an appellant's failure to obtain a statement of decision requires the reviewing court to defer to the trial court's findings of fact (Code Civ. Proc., § 632; *Yellen* v. *Board of Medical Quality Assurance* (1985) 174 Cal.App.3d 1040, 1058 [220 Cal.Rptr. 426]), no such deference is paid to the trial court's conclusions of law. (*Homestead Supplies, Inc.* v. *Executive Life Ins. Co.* (1978) 81 Cal.App.3d 978, 984 [147 Cal.Rptr. 22]; *Kennedy* v. *South Coast Regional Com.* (1977) 68 Cal.App.3d 660, 667 [137 Cal.Rptr. 396].)

istrative agency's discretion [citation]." (*Pacifica Corp.* v. *City of Camarillo* (1983) 149 Cal.App.3d 168, 176 [196 Cal.Rptr. 670].)

At oral argument, plaintiffs acknowledged an administrative hearing can involve both legislative and adjudicative functions. This case provides an example of that phenomenon, an agency acting concurrently in a dual role. (Cf. *Woods* v. *Superior Court* (1981) 28 Cal.3d 668 [170 Cal.Rptr. 484, 620 P.2d 1032].) DPA was called upon to resolve two questions. First DPA had to decide if the duties performed by the MCFU investigators are sufficiently similar to those of special agents to require reallocation of their positions into the special agent class. Although section 19818.6 provides the criteria on which to base this determination, the question is legislative as it involves the application of those criteria to create a rule to govern future cases. Or, as the trial court correctly explained, the reallocation of a job position involves policy decisions which are inherently legislative.

Because we conclude the trial court correctly determined plaintiffs' claim for reclassification of position involved a quasi-legislative determination, it follows the trial court properly reviewed DPA's denial of the reclassification claim under the arbitrary or capricious standard of review.[5] The trial court ruled DPA was neither arbitrary nor capricious in refusing to reclassify the positions occupied by plaintiffs. We reject plaintiffs' contention that substantial evidence does not support this ruling. DPA concluded that special agents are distinct from MCFU investigators in two ways: special agents (1) receive additional training in narcotics and (2) provide training, technical assistance and coordination to local law enforcement agencies. These findings are supported by a comparison of the job description for special agents and a "statement" of the duties of MCFU investigators. There is substantial evidence to support the trial court's conclusion that DPA did not act arbitrarily or capriciously.[6]

Second, DPA was called upon to decide if plaintiffs were in fact working out of class as special agents. This question is in its essence adjudi-

[5] The standard of review of *quasi-legislative* determinations, under ordinary mandamus, is not affected by the fact the hearing may involve fundamental vested rights. (*Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d at p. 34, fn. 2.)

[6] The "statement" of duties of MCFU investigators was not introduced at the DPA hearing. However, in conducting the quasi-legislative proceeding, DPA was entitled to consider its own file, a public document, as well as evidence obtained through its independent investigation. (*Rivera* v. *Division of Industrial Welfare* (1968) 265 Cal.App.2d 576, 587 [71 Cal.Rptr. 739]; *Brock* v. *Superior Court* (1952) 109 Cal.App.2d 594, 605-606 [241 P.2d 283].) Thus, DPA properly considered the statement in the quasi-legislative portion of its decision-making. We do not here determine the propriety of DPA's consideration of that document during DPA's quasi-adjudication regarding backpay.

cative, as it involves the application of established rules (i.e., the job descriptions of MCFU investigators and special agents) to existing facts, i.e., the actual duties performed by plaintiffs as established by evidence at the hearing. Viewed another way, plaintiffs' claim involves their right to compensation commensurate with their work which is inherently an adjudicative question. Had DPA concluded plaintiffs were working out of class, the remedy would have been to give them backpay at the rate paid to special agents for up to one year prior to the filing of their grievance. (§ 19818.16, subd. (a).)

Because plaintiffs' claim for backpay involved a quasi-adjudicative determination, the trial court erred in applying the arbitrary or capricious standard of review. We must therefore reverse the judgment to the extent it affirms DPA's conclusion that plaintiffs did not perform the actual duties of special agents.

*California Hotel & Motel Assn.* v. *Industrial Welfare Com.* (1979) 25 Cal.3d 200 [157 Cal.Rptr. 840, 599 P.2d 31], relied on by DPA for the proposition the trial court must defer to its compensation determinations, is inapposite. In that case the association challenged wage and hour standards for housekeeping employees set by the commission. This case, however, does not involve the legislative question of what MCFU investigators' salaries should be, but rather the adjudicative question of whether MCFU investigators performed the same work as employees in a higher classification but for lower pay.

In *State Trial Attorneys' Assn.* v. *State of California* (1976) 63 Cal.App.3d 298 [133 Cal.Rptr. 712], four attorneys with the Department of Transportation brought a mandamus action to compel the State Personnel Board to increase their salary levels to those of attorneys in equivalent positions in other state agencies. We stated that "[s]etting compensation for public employees is a legislative function." (At p. 303.) This was unquestionably a correct statement of the law. However, *State Trial Attorneys' Assn.* did not involve the adjudicative question whether the attorney claimants *in fact* performed the same functions as employees in a higher job classification. Moreover, when *State Trial Attorneys' Assn.* was decided, state employees could not recover backpay for out of class work because section 19818.6 which specifically authorizes that remedy had not then been enacted. (See *Mierke* v. *Department of Water Resources* (1980) 107 Cal.App.3d 58, 60 [165 Cal.Rptr. 490].)

DPA cites *Leftridge* v. *City of Sacramento* (1943) 59 Cal.App.2d 516 [139 P.2d 112]. In that case the court considered the standard of review in the trial court of a mandamus action to compel the city's civil service board to

pay garbagemen the same wages as truck drivers who performed similar duties. (At pp. 518-519.) Although the court decided the arbitrary or capricious standard applied, its decision was based on the fact the civil service board was not an agency of state-wide jurisdiction, thus distinguishing it from such cases as *Drummey* v. *State Bd. of Funeral Directors* (1939) 13 Cal.2d 75, 84 [87 P.2d 848], which recognized a right to a trial de novo in the superior court. (59 Cal.App.2d at p. 526.) *Leftridge* was decided before the Legislature enacted Code of Civil Procedure section 1094.5 (Stats. 1945, ch. 868, § 1), which has been construed as requiring either a limited trial de novo or substantial evidence review of quasi-adjudicative administrative decisions. (*Pacifica Corp.* v. *City of Camarillo, supra,* 149 Cal.App.3d at p. 178.) Moreover, to the extent *Leftridge* suggests the de novo standard of review is inapplicable to decisions of local agencies, it has been implicitly overruled by *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d at page 44.

DPA also cites *Spaulding* v. *Philbrick* (1940) 42 Cal.App.2d 58 [108 P.2d 59], which, like *Leftridge,* was also decided before the enactment of Code of Civil Procedure section 1094.5. There, a highway patrol officer brought a petition for mandamus to compel his employer, the Department of Motor Vehicles, to recognize a State Personnel Board decision reclassifying him as a squad captain. (At p. 59.) The case is inapposite in that it involved an action in ordinary mandamus, which is subject to review under the arbitrary or capricious standard. (See *Strumsky, supra,* at p. 34, fn. 2.)

Because the DPA hearing regarding plaintiffs' backpay claim was quasi-adjudicative, the trial court erred in reviewing DPA's denial of that claim under the arbitrary or capricious standard.

## IV

■ We determine next whether on remand the trial court should apply the substantial evidence or the independent judgment standard of review. If DPA is a constitutional agency or the Legislature had expressed the intent to give DPA final adjudicatory powers, the substantial evidence test applies. Otherwise, if the DPA adjudication implicates plaintiffs' fundamental, vested rights, the independent judgment test applies.

■ "On petition for writ of mandamus to review the final decision of an administrative agency, the trial court must determine whether there has been a prejudicial abuse of discretion. In cases where it is claimed the findings are not supported by the evidence, if the trial court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the findings are not supported by the weight of the

evidence; in all other cases, the trial court determines whether the findings are supported by substantial evidence in light of the whole record. (Code Civ. Proc., § 1094.5, subds. (b), (c).) [¶] The trial court is authorized to exercise its independent judgment on the evidence where the administrative agency is of legislative origin and its decision affects a fundamental vested right. [Citation.]" (*Champion Motorcycles, Inc.* v. *New Motor Vehicle Bd.* (1988) 200 Cal.App.3d 819, 823-824 [246 Cal.Rptr. 325].)

On the other hand, the trial court may not exercise its independent judgment, but must instead review the entire record for substantial evidence, if the agency is of constitutional origin and has been granted limited judicial power by the Constitution (*Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d at p. 35) or if the Legislature ". . . accord[s] finality to the findings of a statewide agency," i.e., if the Legislature expressly provides that the trial court will review decisions of the agency under the substantial evidence test. (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 346 [156 Cal.Rptr. 1, 595 P.2d 579].)

The California Supreme Court in *Strumsky* explained the separation of powers doctrine (Cal. Const., art. III, § 3) permits one branch of government to exercise the powers of the other two only to the extent permitted by the Constitution; thus, an administrative agency's factual determinations are accorded the deference of those of a court only if the agency's adjudicative authority derives from the Constitution. (11 Cal.3d at pp. 35-36.) In *Tex-Cal Land Management,* the court tempered the constitutional analysis of *Strumsky* somewhat. Nevertheless, the court explained that in enacting Code of Civil Procedure section 1094.5, the Legislature intended to leave to the courts the question of the standard of review. (24 Cal.3d at pp. 344-346; see also *Bixby* v. *Pierno, supra,* 4 Cal.3d at p. 140.) Thus, in the absence of an express legislative provision of the appropriate standard, the distinction between agencies of constitutional versus legislative origin continues to control the standard of review.

■■■ DPA is an agency of legislative origin (§§ 19815, 19816). The Legislature has not provided that the substantial evidence test should govern review of its adjudicatory decisions. Thus, the trial courts must review DPA's adjudicatory decisions de novo if those decisions affect fundamental vested rights.

In *Allen* v. *Department of Personnel Administration* (1987) 193 Cal.App.3d 355, 361-362 [238 Cal.Rptr. 317], the court came to the opposite conclusion, reasoning that because the Legislature transferred many of the functions of the State Personnel Board, a constitutional agency, to

DPA, the Legislature *implicitly* intended to transfer the same standard of review to DPA. ▊ *Allen* fails to give effect to a cardinal rule of statutory construction that the Legislature is presumed to have knowledge of existing judicial decisions and to have enacted statutes in their light. (*Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874].) By transferring the responsibilities of a constitutional agency to a legislative agency, we must presume the Legislature intended to alter the standard of review. For these reasons we decline to follow *Allen.*

▊ Thus, we turn to the ultimate issue in this case, whether DPA's adjudication affected plaintiffs' fundamental vested rights. "Courts must decide on a case-by-case basis whether an administrative decision or class of decisions substantially affects a fundamental vested right. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242].) To determine whether a right is fundamental and vested, we look to either of two factors: '(1) the character and quality of its economic aspect; (2) the character and quality of its human aspect.' (*Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 780 [163 Cal.Rptr. 619, 608 P.2d 707]; see also *Strumsky, supra,* at p. 45; *Bixby, supra,* at pp. 144-145.)" (*Champion Motorcycles, Inc.* v. *New Motor Vehicle Bd., supra,* 200 Cal.App.3d 819 at p. 824.) In addition, "vested" is used in its nontechnical sense to mean a right " 'already possessed' " or " 'legitimately acquired.' " (*Harlow* v. *Carleson* (1976) 16 Cal.3d 731, 735 [129 Cal.Rptr. 298, 548 P.2d 698].) "On this basis, [the California Supreme Court] has distinguished generally between applicants and recipients in determining whether a right is 'vested' for the limited purpose of determining the applicable scope of review." (*Ibid.*)

▊ Plaintiffs' backpay claim involves public employment compensation, a fundamental right because it " . . . directly affects an employee's ability to continue to support his family . . . ." (*Dickey* v. *Retirement Board* (1976) 16 Cal.3d 745, 751 [129 Cal.Rptr. 289, 548 P.2d 689] [full salary disability benefits]; see also *Roccaforte* v. *City of San Diego* (1979) 89 Cal.App.3d 877, 886 [152 Cal.Rptr. 558] [right to injury-leave pay and retirement]; *Estes* v. *City of Grover City* (1978) 82 Cal.App.3d 509, 515 [147 Cal.Rptr. 131] ["Pay grade is certainly important in 'the life situation' to a modestly compensated public employee."]; *Faulkner* v. *Public Employees' Retirement System* (1975) 47 Cal.App.3d 731, 734 [121 Cal.Rptr. 190] [retirement disability benefits].)

DPA takes issue with plaintiffs' claim their fundamental rights are vested. DPA contends there is no vested right involved here because plaintiffs' claim for backpay is dependent upon their prevailing in their claim for reclassification, a claim not involving a vested right. DPA's argument misses the mark. Plaintiffs contend that for years they have performed the

work of employees in a higher classification.[7] If plaintiffs ultimately prevail on their claim, they are entitled to compensation for work they have already performed irrespective of the outcome of their efforts to obtain reclassification.

None of the authorities relied on by DPA stands for the proposition the right to compensation for out-of-class work is not fundamental and vested. (See *Ligon* v. *State Personnel Bd., supra,* 123 Cal.App.3d 583; *Mierke* v. *Department of Water Resources, supra,* 107 Cal.App.3d 58; *Snow* v. *Board of Administration, supra,* 87 Cal.App.3d 484; *Pinion* v. *State Personnel Board, supra,* 29 Cal.App.2d 314.) DPA's reliance on *Schultz* v. *Regents of University of California* (1984) 160 Cal.App.3d 768 [206 Cal.Rptr. 910] is also misplaced as *Schultz* involves the question of the existence of a due process property or liberty interest, rather than the existence of a fundamental vested right for purposes of the standard of review.

As we have concluded DPA's backpay decision affected plaintiffs' fundamental vested rights, it follows that upon remand, the trial court in its review of that decision must exercise its independent judgment on the entire record.

Finally, plaintiffs argued in the trial court that DPA's consideration of matters outside the record deprived them of due process but plaintiffs have not renewed that contention here. Thus, we leave the issue for the trial court upon remand.

V

To the extent it denies plaintiffs' petition to compel DPA to award backpay, the judgment is reversed and remanded for proceedings consistent with this opinion. In all other respects the judgment is affirmed.

Blease, J., and Sims, J., concurred.

---

[7] Although DPA contends plaintiffs never raised the backpay claim during the administrative proceeding, the record shows plaintiffs asked for backpay during the DPA hearing and argued they were not only performing tasks similar to those of special agents but also tasks equal to or more demanding than those performed by special agents.