THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM H. HANNAN, Respondent, *v.* THE BOARD OF HEALTH OF THE CITY OF TROY et al., Appellants.

1. CIVIL SERVICE — VETERANS — REMOVAL — L. 1896, CH. 821. The words " holding a position," in the statute (L. 1896, ch. 821) which forbids the summary removal of a veteran holding a position in the service of the state or of one of its political divisions, mean only a lawful, as contrasted with a *de facto* title, and do not cover a tenure by illegal appointment.

2. APPOINTMENT OF VETERAN WITHOUT CIVIL SERVICE EXAMINA- TION — REMOVAL. The appointment of a veteran to a position subject to the civil service statute and rules (as was the position of registrar of vital statistics of the city of Troy in 1888), without his having passed the requisite examination, makes his appointment illegal, and renders him a *de facto* officer only, having no valid title to the position and hence not within the protection of the act of 1896 (Ch. 821) ; and it is the duty of the appointing power, upon learning the facts, to dispense with his serv- ices and appoint a person possessing the qualifications required by law.

3. HEARING PRECEDENT TO REMOVAL — " INCOMPETENCY." The word " incompetency," as used in the act of 1896 (Ch. 821) which forbids the removal of a veteran holding a position in the service of the state or of one of its political divisions, " except for incompetency or misconduct shown, after a hearing upon due notice, upon the charge made," refers to the capacity of a legally appointed incumbent to fill the place, not to eligibility to appointment, and hence does not entitle a *de facto* officer to a hearing as to whether he had passed the required civil service examination.

*People ex rel. Hannan* v. *Board of Health,* 15 App. Div. 272, reversed.

(Argued June 22, 1897; decided October 5, 1897.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered April 5, 1897, which affirmed an order of Special Term granting a writ of peremptory mandamus.

The facts, so far as material, are stated in the opinion.

*William J. Roche* for appellants.    To entitle the applicant to a peremptory writ of mandamus it must appear that his right to the office or position of registrar of vital statistics is clear and distinct.    (Code Civ. Pro. § 2070; *People ex rel.* v. *Rupp,* 90 Hun, 145; *People ex rel.* v. *Board of Suprs.,* 64 N. Y. 600; *People ex rel.* v. *Goetting,* 133 N. Y. 569; *People ex rel.* v. *Mayor, etc.,* 149 N. Y. 215; *People ex rel.* v. *Board of Trustees,* 17 Misc. Rep. 652.)    This matter must be determined upon the assumption that the averments in the affidavits submitted on behalf of the defendants are true. (*People ex rel.* v. *Brush,* 146 N. Y. 60; *People ex rel.* v. *Mayor, etc.,* 149 N. Y. 215.)    The act of 1896 does not authorize the proceeding by mandamus, which has been instituted by the relator.    (Const. N. Y. art. 5, § 9; L. 1884, ch. 410, § 4; L. 1894, ch. 717; Code Civ. Pro. §§ 2140–2142.) Hannan must show that his appointment was valid.    (L. 1883, ch. 354; *Bamber* v. *City of Rochester,* 26 Hun, 587; 97 N. Y. 625; *Groves* v. *City of Rochester,* 39 Hun, 5; *Maxmilian* v. *Mayor, etc.,* 62 N. Y. 160; *Peck* v. *Belknap,* 130 N. Y. 394.)    The fact that the relator passed an examination at the hands of the municipal civil service examiners is not available to him.    (L. 1884, ch. 410; L. 1894, ch. 681.) The statute of 1896 does not contemplate that a hearing and trial shall be had, except in case of incompetency or misconduct.    Where a person is holding an office or position to which he was illegally appointed, it is not necessary that charges should be made against him, and he should have a hearing thereon prior to his removal on that ground.    (L. 1895, ch. 344; *Flatan* v. *State,* 56 Tex. 93; *Lyons* v. *Gloucester City,* 49 N. J. L. 177; *People ex rel.* v. *French,* 102 N. Y. 583; *People ex rel.* v. *Manning,* 42 N. Y. S. R. 81.)    Han-

nan's displacement was followed by the filling of his office by another person who is now discharging its duties. Bolton, the incumbent, has not been made a party to these proceedings. He has not had his day in court; he is entitled to be heard. Even if this application is the proper form in which to move, then the incumbent should have been served and made a party hereto. (*People ex rel.* v. *Vil. of Saratoga Springs*, 54 Hun, 16; *People ex rel.* v. *Rupp*, 90 Hun, 148; *People ex rel.* v. *Brush*, 146 N. Y. 60; *People ex rel.* v. *Bd. of Trustees*, 17 Misc. Rep. 652; *People ex rel.* v. *Goetting*, 133 N. Y. 569.) Although Hannan's appointment was unlawful, still, as a *de facto* officer, his acts as to third persons were valid. When, however, he comes into court asserting a right to the salary and emoluments of the office, he must prove that he is entitled to the office of right. When his claim is attacked, he must establish the legality of his position. He must be a *de jure* officer. (*Dolan* v. *Mayor, etc.*, 68 N. Y. 274; *McVeany* v. *Mayor, etc.*, 80 N. Y. 185; *People ex rel.* v. *Anthony*, 6 Hun, 142; *People ex rel.* v. *Sheffield*, 47 Hun, 481.) The fact that the registrar has no definite term of office does not alter the case in any respect. Having no prescribed term he could be removed at any time. (*People ex rel.* v. *Crissey*, 91 N. Y. 616; *People ex rel.* v. *Robb*, 126 N. Y. 180; *People ex rel.* v. *Morton*, 148 N. Y. 156.)

*Thomas S. Fagan* for respondent. *Prima facie*, Hannan's appointment was valid, and could not be questioned except by proceedings in the nature of quo warranto. It was not necessary that any vacancy should exist to entitle him to apply for, and be examined for, the position of registrar of vital statistics. (L. 1893, ch. 661, §§ 20–22, 30.) The provisions of the statute (Ch. 821, Laws of 1896) are sufficient of themselves to restore Hannan to his position and compel the board of health of the city of Troy to recognize him. (*People ex rel.* v. *Lathrop*, 142 N. Y. 113; *People ex rel.* v. *Stevens*, 5 Hill, 616.) The board of health, whether it is a department of the city government or a department of the state,

and whether the city or the state civil service commission had the power of examination, had no judicial functions, and its proceedings in ousting Hannan were wholly void. (Const. N. Y. art. 1, § 6; *People ex rel.* v. *Whitlock,* 92 N. Y. 198; *Bagg's Case,* 11 Coke, 99; Dillon on Mun. Corp. [4th ed.] 333, § 250; *People ex rel.* v. *Lathrop,* 142 N. Y. 113.) The relator was in actual possession of the office of registrar of vital statistics, and exercising the functions of that office. He could not, therefore, in the face of the statute be summarily removed. He was entitled to be heard and to have an opportunity to establish the validity of his title to the office. (*People ex rel.* v. *Comrs.,* 10 N. Y. S. R. 368; *Reg.* v. *Saddlers' Co.,* 10 H. L. Cas. 404; *Reg.* v. *Mayor, etc.,* 11 Ad. & E. 512; *People ex rel.* v. *Lathrop,* 142 N. Y. 113.) The relator is not seeking here to establish his title to the office, position or employment of registrar of vital statistics to the board of health of the city of Troy, but to overcome his summary removal therefrom. (*People ex rel.* v. *Board,* 9 Abb. Pr. 270; *People ex rel.* v. *Van Siclen,* 43 Hun, 540.) It is no answer to the relator's application for mandamus that another has been appointed or is performing the duties of the position. The removal being wrongful and contrary to the express provisions of the statute, there was no vacancy to fill, and the subsequent appointment is invalid. (*People* v. *Steele,* 2 Barb. 398; *People ex rel.* v. *Board,* 9 Abb. Pr. 257; *Nicholas* v. *MacLean,* 101 N. Y. 527; *People ex rel.* v. *Schrugham,* 20 Barb. 302.) Independent of the statute, relator has a remedy by mandamus for restoration to his employment. (*People ex rel.* v. *Lathrop,* 142 N. Y. 113; *People ex rel.* v. *French,* 102 N. Y. 583–586; *People ex rel.* v. *Board of Police,* 35 Barb. 527; *People ex rel.* v. *French,* 12 Hun, 255; *People ex rel.* v. *Board,* 9 Abb. Pr. 269; *People ex rel.* v. *Manning,* 16 N. Y. Supp. 604; *People ex rel.* v. *Comrs., etc.,* 76 Hun, 146; *In re Sullivan,* 55 Hun, 285; *In re Wortiman,* 22 Abb. [N. C.] 138; *People ex rel.* v. *Bardan,* 7 N. Y. Supp. 123; *In re Torney,* 7 Misc. Rep. 260; *People ex rel.* v. *Schrugham,* 20 Barb. 302; *People ex rel.* v. *Sutton,* 88 Hun, 173.)

VANN, J.   On the twentieth of April, 1888, the board of health of the city of Troy, which was then organized pursuant to chapter 270 of the Laws of 1885, assumed to appoint the relator to the position of registrar of vital statistics in the place of Samuel E. Hutton, who had resigned on the same day.   At the time of such appointment the relator had not passed, nor so far as appears has he at any time since passed, the examination required by the statutes regulating the civil service of the state.   (L. 1883, ch. 354; L. 1884, ch. 410.)   He assumed the duties of the position and continued to discharge them until the fourth of June, 1896, when the new board of health, organized under chapter 661 of the Laws of 1893, without preferring charges or giving him an opportunity to be heard, dispensed with his services and in his place employed one Edward Bolton, who has ever since performed the same duties and has received the compensation allowed by law.   The relator, who is an honorably discharged Union soldier, instituted this proceeding to compel the defendants, composing the board of health of the city of Troy, "to recognize and restore" him to said position upon the ground that said board had no power to discharge him until after a hearing upon due notice, founded upon a charge of misconduct or incompetency.   No question is raised as to the regularity of the appointment of Mr. Bolton, who is not a party to the proceeding, provided there was a vacancy to be filled, and it is not denied that the defendants had authority to remove the relator at any time they saw fit, without hearing or notice, unless he was protected by some statute. (*People ex rel. Griffin* v. *Lathrop*, 142 N. Y. 113; *People ex rel. Fonda* v. *Morton*, 148 N. Y. 156.)   He bases his claim to protection upon an amendment to the Civil Service Act passed in 1896, which, after giving preference "for appointment, employment and promotion" to "honorably discharged Union soldiers," provides that "no person holding a position by appointment or employment in the State of New York or of the several cities, counties, towns or villages thereof * * * who is an honorably discharged soldier, sailor

or marine, having served as such in the Union army or navy during the war of the rebellion, and who shall not have served in the Confederate army or navy, shall be removed from such position or employment, except for incompetency or misconduct shown, after a hearing upon due notice, upon the charge made." (L. 1896, ch. 821; L. 1894, ch. 716; L. 1884, ch. 312.) If, therefore, the relator held the position in question within the meaning of this statute, the action of the defendants in removing him without an opportunity to be heard was unauthorized, and he is entitled to relief. If, however, the words " holding a position," as used in the act, mean only a lawful, as contrasted with a *de facto* title, the statute has no application and affords no protection to the relator. When the legislature forbade the summary removal from office or employment of a veteran of the late war holding a position in the state, or one of its political divisions, it did not refer to an usurper, or to one who simply had possession of an office without lawful authority, but to one who held his position according to law and by virtue of a valid appointment or employment. In a civilized community " holding a position " means lawfully holding it, and it would be unreasonable to declare that the legislature meant by that expression to include those who held office by force, fraud, mistake, or without any right thereto. A statute should receive a sensible construction, in conformity to reason and justice, unless the language used is so clear and explicit as to prevent it. It is to be presumed that the legislature did not intend to work public mischief, and when the words of a statute admit of two constructions, one of which is just and reasonable and the other not, the former will be preferred. (*Smith* v. *People*, 47 N. Y. 330; *Rosenplaenter* v. *Roessle*, 54 N. Y. 262; *Penoyar* v. *Kelsey*, 150 N. Y. 77, 83.) We do not think it was the intention of the act to legalize illegal appointments throughout the state, even if the appointees were veterans, as that would not only be unjust to worthy veterans who had duly qualified for appointment by passing the civil service examination, but also might lead to serious public inconvenience. (L. 1886, ch. 29, § 2.) Both the title

1897.]   Peo. ex rel. Hannan v. Board of Health.   519

N. Y. Rep.]        Opinion of the Court, per Vann, J.

and the text of the statute, as amended at different times, indicate an intention to retain in the public service qualified and legally appointed soldiers of the late war, subject to removal only " for incompetency or misconduct shown." (L. 1884, ch. 312; L. 1887, ch. 464; L. 1894, ch. 716; L. 1896, ch. 821.)   The words " incompetency," " removed " and " appointment," as used in the act relied upon by the respondent, in the absence of anything to indicate a different intention, imply a legal appointment, and if the legislature had intended to make valid all invalid appointments the presumption is that it would have issued its command upon so important a subject in clear and express terms.   The object of the act was to protect those lawfully appointed or employed from removal without a chance to be heard.   As the position in question was subject to the civil service statute and rules, the failure of the relator to pass the examination required made his appointment illegal, for it was expressly prohibited by the act " to regulate and improve the civil service of the state," as at different times amended.   (L. 1883, ch. 354, § 8; L. 1884, ch. 410, § 2; *Peck* v. *Belknap*, 130 N. Y. 394, 399.)   He was, therefore, an officer *de facto* only, and, while his acts were binding upon the public, he had no title to the position, and it was the duty of the defendants upon learning the facts to dispense with his services and appoint a person who possessed the qualifications required by law.   The learned Appellate Division affirmed the order granting a peremptory writ of mandamus against the defendants mainly upon the ground that the relator was entitled to notice and a hearing as to whether he had passed the civil service examination, or, in other words, whether his appointment was valid when made.   If this position is sound it must be because some statute so provides, expressly or impliedly, for otherwise there can be no restriction upon the power of an appointing board to dispense with the services of one who has no right to the position.   In such a case there is no removal from office, because there is no one lawfully in the office.   A *de facto* officer is merely an intruder, so far as the power to fill the position by appoint-

ment is concerned. He is entitled to no notice from the appointing power, and it is his duty to yield immediate possession to its appointee. The only statute that is claimed by the courts below or by the respondent to require notice and a hearing in the case of a *de facto* officer is the one quoted above. Founded upon that statute, the argument is made that "incompetency," as there used, includes the question of legal qualification at the date of appointment, and hence involves the inquiry whether the occupant of the office had passed the civil service examination required by law. We think, however, that this construction gives the word too broad a meaning, for as we read the section, it simply provides for the case of an officer lawfully appointed, who proved unable to discharge the duties of the position through want of skill, knowledge, ability, or some requisite of that kind, or was guilty of misconduct. "Incompetency" assumes the existence of a legal relation between the appointee and the office. When the original act is read in connection with the various amendments, it is clear that the word refers to capacity to fill the place, not eligibility to appointment. For instance, the amendment of 1884 provides that veterans shall be preferred for appointment to positions in the public service and that they shall not be disqualified from holding any position therein on account of age, or by reason of any physicial disability, provided it does not render them *incompetent* to perform the duties. (L. 1884, ch. 410, § 4; L. 1895, ch. 344, § 1.) This and other sections that might be quoted show that the legislature meant by "incompetency" the want of ability or fitness, as a matter of fact, and not eligibility or status as matter of law. The requirement that charges are to be preferred indicates an intention to cover conditions existing after a legal appointment has been made and not to secure a tenure of office or employment where the appointment was in violation of law.

The object of the amendment of 1896 was to remedy a defect that was pointed out in *People ex rel. Fonda* v. *Morton* (148 N. Y. 156), where it was held that the amend-

ment of 1894 making veteran incumbents irremovable except " for incompetency and conduct inconsistent with the position held " did not require notice or an opportunity to be heard before the power of removal was exercised. That decision was handed down in January, 1896, and in May following the legislature further amended the act so as to provide for notice and a hearing upon charges made. We think that there was no intention to legalize invalid appointments, or to give a right to be heard as to the validity of the appointment when made, but simply to guard the veteran soldier against removal from a position lawfully held by him, until he has had notice of an accusation against him and the right to make a defense. These views find support in that line of authorities which hold that statutes prohibiting the removal of an officer until written charges have been made against him do not apply to the case of one who was ineligible when he was appointed. In *People ex rel. Kopp* v. *French* (102 N. Y. 583, 585) Judge EARL said: " Kopp was not legally a member of the police force. He was ineligible ; the police commissioners had no right under the statute to appoint him ; and when it came to their knowledge that he had been convicted of a crime, and, was, therefore, ineligible to the office, they had the right summarily to vacate his appointment, discharge him from the police force, and refuse longer to recognize him as a member thereof." In *People ex rel. Krushinsky* v. *Martin* (36 N. Y. Suppl. 851, 853) the court said: " The provisions of the law requiring the formulation of written charges and service of the same could only apply to one who had been legally constituted a member of the force. As against the relator such a course was unnecessary for the reason that the proceedings of the board of police were in the nature of an investigation to ascertain whether or not he was legally a member of the force. * * * The relator never was legally a member of the force because, being appointed in violation of the civil service laws, his appointment was void *ab initio* and conferred no rights upon the appointee." (See, also, *People ex rel. McTigue* v. *Manning*, 42 N. Y. St.

66

Rep. 81; *Flatan* v. *State*, 56 Tex. 93; *Lyons* v. *Common Council of Gloucester*, 49 N. J. L. 177.)

For these reasons we feel that it is our duty to reverse the order appealed from and to dismiss the proceeding, with costs.

All concur, except GRAY, J., absent, and BARTLETT, J., not voting.

Order reversed.