[Civ. No. 6111.   Third Appellate District.—November 17, 1938.]

ELSIE PINION et al., Petitioners, v. STATE PERSONNEL BOARD et al., Respondents.

Anthony J. Kennedy and Fontaine Johnson for Petitioners.

U. S. Webb, Attorney-General, and Wilmer W. Morse, Deputy Attorney-General, for Respondents.

THE COURT.—This is an original proceeding in mandate filed by some thirty employees of the state of California, holding permanent status under civil service, all of whom are employees in the department of motor vehicles.

The writ sought to compel the Personnel Board and the department heads to recognize petitioners as holders of certain positions and to allow them to continue to perform the duties of such positions and to assume the official titles thereof. To this petition respondents interposed a general demurrer, and the only question, therefore, is whether or not the petition as filed states grounds sufficient to grant the petitioners the relief sought.

The State Personnel Board, after a hearing, allotted positions in certain departments to appropriate places in the personnel classification plan of the state, based upon the duties and responsibilities incident to such positions. At that time these petitioners were performing such duties and were exercising such responsibilities and had been for some time prior thereto.

In the order of the Personnel Board establishing classes of positions in the motor vehicle department some seventeen such classes were so established. Thereafter, through consolidation and changes made by the civil service commission these seventeen clases were incorporated into twelve classes, and these petitioners now hold positions in one of these twelve classes.

Some time after the original classification and allocation the director of the department, being dissatisfied with the classification of positions, requested the State Personnel Board to make a survey of all clerical positions in that department. This classification was completed in June, 1937, the result disclosing that each petitioner herein was actually performing duties of a class higher than that for which she had been certified; that is, with one exception, all of these petitioners had been certified from a class in the junior group such as junior clerk, junior file clerk or junior typist, while she had been and was actually performing daily duties of a position which should be in the class of intermediate clerk, intermediate file clerk and intermediate typist clerk. One exception is the case of Elsie Pinion, which was classed as intermediate clerk, but her actual duties were those of a senior clerk.

Thereupon, these petitioners, with others, petitioned the board to reclassify the positions they were holding according to the survey made by the board, and further petitioned the board to allow them to continue in the performance of the duties of such positions when reclassified allowing to the employees the right to assume the new classification title of the position. After a hearing the board ordered that all positions be reclassified according to the findings of the board, but denied to these petitioners, for lack of jurisdiction, the right to continue in the duties of the position, and further ordered that the payrolls of these employees be not certified

as long as they continue to hold the particular position so reclassified.

The findings of the board disclosed that some of the petitioners have been in the state service since 1932 and some since 1934. Those employees who were in the service of the state in 1932 were affected by a reclassification made at that time. From the present survey it was found that in some cases there was an error in that the employee was still performing the same duties prior to 1932 that she was performing at the time of the survey completed in 1936. As to other petitioners it was found that the appointing powers since the 1932 classification had assigned duties to the particular employees, which changed the classification of the position since that position had been reclassified in 1932. Also the petition included some who had entered the state service subsequent to 1932 and whose positions were not subject to the 1932 reclassification. Some of these petitioners had performed the same duties since their original appointment, others have had different duties assigned them from their original duties. We do not believe, however, that the conclusions we have reached are affected in any way by these separate classifications, although we recognize the existing inequalities.

The first civil service law was enacted in 1913 (Stats. 1913, p. 1035.) Effective December 20, 1934, article XXIV was added to the state Constitution. By section 5 of this article the laws relating to state civil service were continued in force subject to the power of the legislature to reamend or repeal such laws and enact new laws not in conflict with said article. In 1937 the legislature repealed the 1913 Civil Service Act and enacted a new Civil Service Act, which became effective in August, 1937 (Stats. 1937, chap. 753). For convenience the 1913 act will be referred to as the old Civil Service Act and the 1937 act as the new Civil Service Act.

Under the old Civil Service Act the civil service commission was directed to classify positions to be held under state authority in accordance with the duties attached to such positions and to determine the merit, efficiency and fitness of applicants and to prepare classified eligible lists. Thereafter when a vacancy was to be filled other than by promotion, the appointing power was required to notify the commission of

the vacancy, stating the duties of the position, whereupon the commission certified names to the appointing power from the eligible list, and the appointing power selected one of the persons so certified and appointed him to the vacant position. Under the rules and regulations of the civil service commission vacancies were filled so far as practical by promotion based upon merit, determined by competitive examinations.

The new civil service list provides for selection of personnel in substantially the same manner, section 114 thereof providing that no person shall be assigned to perform the duties of any other class than that to which his position is allocated.

The allegations of the petition adopt the findings of the State Personnel Board respecting the examinations taken by petitioners, dates of their appointment, classes of the positions to which they were appointed and the changes which took place in those positions. These findings show that the employees had been originally appointed to positions of junior clerk, junior file clerk and junior typist as the case might be. That thereafter such employee was assigned by the appointing power to perform other duties, which duties the Personnel Board found to be the duties of an intermediate employee and not the duties of a junior, and that the class of intermediate is a different and higher class than that of junior, and the examinations given to qualified persons for positions for the class of intermediate involve essential tests and classification different from and higher than those involved in the examinations given for entrance to positions in the junior classes, and that since said assignment of duties the said employee is now performing the duties of intermediate employee and is not now performing the duties of junior employee. There is no allegation, however, that petitioners took any examination for the position of intermediate employee, nor do petitioners allege that their names were ever on an eligible list for positions for intermediate employees or for any comparable position, nor do they allege their names were ever certified to an appointing power for positions of intermediate employees, nor do they allege they were ever appointed to positions of intermediate employees, but particularly allege that on a certain date they were assigned by the appointing power to perform, and at all times since have performed intermediate duties. Nor do peti-

tioners allege they performed the duties of intermediate employees with the consent of the commission as required by the old Civil Service Act. Article XXIV of the Constitution, section 1, provides that permanent appointments and promotions in the state civil service shall be made exclusively under the general system based upon merit, efficiency and fitness as ascertained by competent examinations. So, too, the petition fails to allege that petitioners took any promotional examinations or were certified for appointment to or were appointed to the positions allocated by the board.

On April 30, 1938, when the Personnel Board made its finding and ordered the positions occupied by petitioners allocated to their appropriate places under the personnel classification plan, at that time a new Civil Service Act (Stats. 1937, p. 2093) provided in sections 60, 61, 62 and 63 for a classification of positions known as the personnel classification plan, which plan included a descriptive title and definition outlining the scope of duties and responsibilities of each class. It further provided that every position in the state civil service shall be allocated to the appropriate class in the classification plan, and that the board from time to time might establish additional classes, and could divide, combine, alter or abolish existing classes, and that whenever a position was allocated or reallocated to its proper class, each employee should assume the classification title of his position.

It is conceded by respondents that under the last section referred to (section 63) when a position was allocated or reallocated, each employee should assume the classification and title of his position. With that we agree, but such section did not here apply, because these petitioners were not lawfully holding these positions nor lawfully performing the duties thereof. They had assumed these positions without qualifying therefor either by examination, certification and appointment in the manner provided by law for filling vacancies either in the case of original appointment or promotion appointment and, if prior to 1934, without having the consent of the civil service commission, to perform such duties. The only positions lawfully held by these petitioners are those for which they were examined and to which they were certified and appointed in the manner provided by law. These petitioners as to the positions they were occupying were

*de facto* employees only, and they have no legal right to contend they should be permitted to assume the classification title to such positions.

The situation is somewhat analogous to the conditions found in the case of *People* v. *Board of Health,* 153 N. Y. 513 [47 N. E. 785]. In that case petitioner was improperly appointed to the position of registrar of vital statistics. His appointment was improper because at the time of the appointment he had not passed nor did he thereafter pass any examination required by the civil service of the state. He assumed his duties in 1888 and continued to discharge them until 1896, when a new board of health, without bringing charges giving him an opportunity to be heard, dispensed with his services.

Petitioner brought an action to compel the defendants to restore him to his position upon the ground they had no right to discharge him until after a hearing founded on a charge of misconduct or incompetency. The court there held, in construing the Civil Service Act, which provided that ''no person holding a position . . . '' the words ''holding a position'' meant only a lawful holding as contrasted with a *de facto* title, and held that petitioner, having been ineligible when appointed, was not protected by the provisions of the Civil Service Act. The foregoing case is in accordance with the principle in the case of *People* v. *Chew,* 68 Colo. 158 [187 Pac. 513].

It cannot be held that the sections on classification above referred to, were placed in the Civil Service Act for the purpose of giving civil service employees status in positions higher than those for which they were examined. If the appointing power could, by assigning duties of a higher nature to an employee, and the State Personnel Board could, by classifying those duties to a higher class than that of the employee's original position, give to an employee a permanent civil service status, the entire fabric of the civil service system would fail. Promotion and appointments in civil service would then no longer be made ''exclusive under a general system based upon merit, efficiency and fitness as ascertained by competitive examination.''

If the petitioners are correct that the appointing power may advance an employee by assigning duties of a higher nature than originally given that position, and then call

upon the Personnel Board to reallocate those duties to a higher class than the employee held under the original classification, and thereby confer upon the employee permanent civil service status, our present plan of civil service will fail.

That such is not the law seems to us to be clearly set forth in the case of *Otto* v. *Reardon,* 21 Cal. App. (2d) 260 [69 Pac. (2d) 185]. In fact that case appears to dispose of many of the questions here presented.

A study of the petition as challenged by the general demurrer convinces us that petitioners have been unable to state a cause of action, and that the demurrer thereto must be sustained, and the petition dismissed. It is so ordered.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 17, 1938, and an application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 16, 1939.