[No. C030969. Third Dist. Apr. 28, 2000.]

DENNIS P. ALEXANDER et al., Plaintiffs and Appellants, v.
STATE PERSONNEL BOARD et al., Defendants and Respondents;
CALIFORNIA STATE EMPLOYEES ASSOCIATION et al., Interveners
and Appellants.

**COUNSEL**

Dennis F. Moss for Plaintiffs and Appellants.

Gary P. Reynolds; Anne M. Giese; and Daniel S. Connolly for Interveners and Appellants.

Bill Lockyer, Attorney General, Martin H. Milas, Assistant Attorney General, Marybelle D. Archibald and Vincent J. Scally, Jr., Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**MORRISON, J.**—With specified exceptions, state workers are governed by the civil service system provided by the California Constitution. (Cal. Const., art. VII, § 1, subd. (a); see *Professional Engineers v. Department of Transportation* (1997) 15 Cal.4th 543, 548 [63 Cal.Rptr.2d 467, 936 P.2d 473].) In 1980, as part of the State Civil Service Act (Gov. Code, § 18500 et seq.), the Legislature adopted Government Code sections 19600 through 19607, which authorize the State Personnel Board (the Board) to conduct, supervise, and evaluate demonstration projects to determine whether a specified change in personnel management policies and procedures would improve state personnel management. In 1997, the Board and the Department of General Services (DGS) agreed to conduct demonstration projects as to two classifications within the DGS, career management assignment and career supervisory assignment. Pursuant to Government Code section 19600 et seq., the Board approved the waiver of various provisions of the State Civil Service Act relating to classification, appointment and discipline.

Plaintiffs and plaintiffs in intervention, taxpayers and various groups of state workers, petitioned for a writ of mandate, challenging the demonstration projects. They appeal from denial of their petition. Together they contend the Legislature cannot permit the Board to waive certain civil service statutes; the waivers infringe on the constitutional merit principle; the Board's waivers and regulations violate the general system requirement of article VII, section 1, subdivision (b) of the California Constitution; the demonstration project law is a void delegation of legislative power; and the selection process in the demonstration projects eliminates the constitutional competitive examination requirement. We find merit only in the attack on the regulation setting forth the process for competitive examinations. We invalidate this regulation and otherwise affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1980, the Legislature enacted Government Code sections 19600 through 19607, which authorize the Board to conduct and evaluate demonstration projects. A demonstration project is "a project conducted by the

State Personnel Board, or under its supervision, to determine whether a specified change in personnel management policies or procedures would result in improved state personnel management." (Gov. Code, § 19600.1.)

These demonstration projects may not infringe upon or conflict with the merit principle of article VII of the California Constitution or the merit principle of the civil service system. (Gov. Code, § 19600.) Subject to that constraint, "the conducting of demonstration projects shall not be limited by any lack of specific authority under this code to take the action contemplated, or by any provision of this code or any rule or regulation prescribed under this code which is inconsistent with the action, including any law or regulation relating to" hours of work and methods of establishing qualifications, classifying positions, compensating employees, assigning, reassigning or promoting employees, disciplining employees, providing incentives, involving employees and labor organization in personnel decisions, and reducing overall agency staff and grade levels. (*Ibid.*) The Board may not waive any provision of chapter 10 (commencing with Gov. Code, § 19680) (the whistle-blower statutes). (Gov. Code, § 19601.)

Before a demonstration project may be entered into, the Board must prepare a detailed plan for the project. The plan must identify the purpose, types and number of employees involved, methodology, duration, training, costs, criteria for evaluation, statutes and regulations waived, effect on the rights and status of employees, and provisions for determining these rights upon termination of the project. (Gov. Code, § 19602, subd. (a)(1)-(10).) The Legislature and affected employees must be notified 180 days in advance of the date the project is to take effect. (Gov. Code, § 19602, subd. (b).) The plan must be published, with an opportunity for written comments, submitted to public hearings, and provided to the Legislature. (Gov. Code, § 19602, subds. (c)-(i).) The Board must also obtain the approval of the agency involved. (Gov. Code, § 19602, subd. (h).)

A demonstration project must terminate after five years and the affected employees retain all rights they would have had if not in the demonstration project. (Gov. Code, §§ 19603, 19607.) The Board must evaluate the results of the demonstration project and its impact on public management. (Gov. Code, § 19606.)

In 1997, the Board approved a plan to conduct two projects for management and supervisory employees in the DGS, the career management assignment project (CMA) and the career supervisory assignment project (CSA). The projects were designed to study alternatives to traditional methods of examining, selecting, appointing, promoting, compensating and removing

managerial employees and supervisory employees above a certain salary range. As part of the projects, various Government Code sections were waived. These statutes related to the definition of class, the establishment and use of lists, examinations, the rule of three ranks and the ranking of scores, probationary periods, appeals of rejections or adverse actions, establishing and adjusting salary ranges, merit and other salary adjustments, layoffs and demotions. In addition, new regulations relating to class, examinations, reemployment lists, probation and appeal from rejection during probation were adopted.

Especially relevant here, the Board adopted a regulation on competitive examinations. (Cal. Code Regs., tit. 2, § 549.6.) The new regulation provided that open or promotional examinations would be conducted pursuant to procedures adopted for career executive assignments. (*Ibid.*) Under those procedures, "Examination results need not be expressed in specific ratings of individuals. The person appointed as a result of a competitive examination must be well qualified and carefully selected. The appointing power is required to promulgate the qualifications that will be used as standards in conducting the examination but is not required to distinguish between groups or individuals as to who is qualified or not qualified or as to relative level of qualification." (Cal. Code Regs., tit. 2, § 548.40.)

Plaintiffs, Dennis P. Alexander, Professional Engineers in California Government, Association of California State Attorneys and Administrative Law Judges, and California Association of Professional Scientists (hereafter collectively Alexander), petitioned for a writ of mandate to compel the Board to fulfill its duty to enforce all civil service laws.[1] Alexander contended the Board had failed to do its duty by establishing a special system for CMA and CSA and waiving certain civil service laws. Alexander also sought a declaration of the Board's duties. Plaintiffs argued that the Board had a ministerial duty to enforce civil service laws and preserve the general system of civil service.

California State Employees Association, Association of California State Supervisors, and Jack Lyall (hereafter collectively CSEA) intervened in the proceeding. CSEA sought to set aside the CMA and CSA projects. CSEA argued the waivers infringed upon the merit principle. In particular, they criticized the examination procedures, claiming the lack of a requirement to

---

[1]The CMA and CSA projects were originally established in 1995 and 1996, respectively, as pilot projects under Government Code section 11808 (Stats. 1996, ch. 191, § 2, repealed by its own terms eff. Jan. 1, 1998.) They were converted to demonstration projects under Government Code section 19600 et seq. In response to the change in justification for these projects, Alexander filed a supplemental petition.

specify the results made the examination not competitive and permitted less successful candidates to be appointed.

In a tentative ruling, the trial court denied the petition. The court then requested supplemental briefing on two questions. The first question was whether the Legislature improperly delegated its legislative authority to the Board in enacting the demonstration project statutes. The second issue was what constituted a competitive examination in light of *Kidd v. State of California* (1998) 62 Cal.App.4th 386 [72 Cal.Rptr.2d 758].

After receiving supplemental briefing on these issues, the court denied the petition.

## DISCUSSION

### I

The Supreme Court has recounted the history of the current constitutional provisions for the civil service system. "In 1913, the California Legislature enacted a statute creating California's first civil service system in an attempt to combat the 'spoils system' of political patronage in state employment. (Stats. 1913, ch. 590, p. 1035.) By the early 1930's, however, the existing statutory civil service system was obviously failing in its primary task. The deficiencies in the system stemmed from several principal sources. First, acceding to political pressure, both the Legislature and the statutory civil service commission itself had over the years exempted numerous depart-ments and positions from the civil service restrictions: indeed, by 1932 the exemptions had become so widespread that '[o]f the 23,222 full-time state employees, only 11,917 held permanent civil service positions.' [Citation.] Thus, fully one-half of the permanent state employees were exempt from the civil service law.

" 'A second abuse of the Civil Service Act was the gross misuse of authorizations for temporary employment [which was not subject to the civil service act] . . . . Officially, temporary appointments followed the three month rule, but this had never been followed. By August 1931, temporary employees constituted more than a third of the entire state service.' [Citation.]

"Finally, in the early 1930's considerable public attention was focused on the problem by widespread newspaper accounts of the allegedly numer-ous politically motivated appointments made by the incumbent Governor. [Citation.]

"It was in this milieu and in response to the specific problems of the times that in 1934 the people adopted article XXIV of the state Constitution. The ballot argument accompanying the 1934 initiative measure sets forth in clear terms both the objectives and the limits of the proposed constitutional provision.

"The ballot argument stated: 'The purpose of this constitutional amendment is to promote efficiency and economy in State government. *The sole aim of the act is to prohibit appointments and promotion in State service except on the basis of merit, efficiency and fitness ascertained by competitive examination.* Appointments of inefficient employees for political reasons are thereby prohibited, thus eliminating the "spoils system" from State employment. [¶] . . . [T]his constitutional amendment provides: (1) Employment in the classified service based solely on merit and efficiency; (2) a nonpartisan Personnel Board; (3) prohibition against exemptions from the merit system of employment; (4) correction of the temporary political appointment evil. [¶] *Having by constitutional mandate prohibited employment on any basis except merit and efficiency, thereby eliminating as far as possible the "spoils system" of employment, the Legislature is given a free hand in setting up laws relating to personnel administration for the best interests of the State,* including the setting up of causes for dismissal such as inefficiency, misconduct or lack of funds.' (Italics added.) (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 6, 1934), argument in favor of Prop. 7, p. 12.)" (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 181-183 [172 Cal.Rptr. 487, 624 P.2d 1215], fn. omitted (*Brown*).)

California Constitution former article XXIV was revised without substantive change in 1970; its provisions were adopted verbatim as article VII in 1976. (*Brown, supra,* 29 Cal.3d at p. 184, fn. 8.) The constitutional language at issue here is found in sections 1 and 3 of article VII. Section 1 provides: "(a) The civil service includes every officer and employee of the State except as otherwise provided in this Constitution. [¶] (b) In the civil service permanent appointment and promotion shall be made under a general system based on merit ascertained by competitive examination." Section 3 provides in part: "(a) The board shall enforce the civil service statutes and, by majority vote of all its members, shall prescribe probationary periods and classifications, adopt other rules authorized by statute, and review disciplinary actions."

In analyzing the challenges to the demonstration project statutes and their implementation, we rely on several fundamental principles of constitutional adjudication. " 'Unlike the federal Constitution, which is a grant of

power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers *which are not expressly, or by necessary implication denied to it by the Constitution.* [Citations.] . . . [¶] Secondly, all intendments favor the exercise of the Legislature's plenary authority: "If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. *Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used."* [Citations.]' (Italics added.) [Citation.]

"Moreover, our past cases establish that the presumption of constitutionality accorded to legislative acts is particularly appropriate when the Legislature has enacted a statute with the relevant constitutional prescriptions clearly in mind. [Citation.] In such a case, the statute represents a considered legislative judgment as to the appropriate reach of the constitutional provision. Although the ultimate constitutional interpretation must rest, of course, with the judiciary [citation], a focused legislative judgment on the question enjoys significant weight and deference by the courts.

"Finally, in evaluating petitioners' contentions we must bear in mind that petitioners' instant challenge pertains to the constitutionality of the statute *on its face.* To support a determination of facial unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute, or as to particular terms of employment to which employees and employer may possibly agree. Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." (*Brown, supra,* 29 Cal.3d at pp. 180-181, original italics.)

Against this constitutional backdrop, we consider the challenges to the demonstration project statutes.

## II

Relying on the constitutional mandate that the Board "shall enforce the civil service statutes" (Cal. Const., art. VII, § 3, subd. (a)), Alexander and CSEA contend the Board cannot waive civil service statutes to implement a demonstration project. They argue waiver is inconsistent with the constitutional mandate of enforcement.

Among the civil service statutes the Board is charged with enforcing is Government Code section 19600. Section 19600 permits the Board to conduct demonstration projects, even though they are inconsistent with certain specified statutes and regulations. By waiving these inconsistent statutes and regulations, the Board is enforcing its authority to conduct demonstration projects. In acting pursuant to this statutory authority, the Board is following its constitutional duty to enforce civil service statutes. Whether the Legislature improperly delegated to the Board the authority and discretion to determine which statutes may be waived is discussed in part IV below.

### III

Alexander contends the demonstration projects, with the accompanying waiver of certain laws, violate the constitutional requirement that appointment and promotion be made under a general system. (Cal. Const., art. VII, § 1, subd. (b).) They argue the demonstration projects create a special system for certain employees. Their position is that all civil servants must be subject to the same rules.

In *Brown*, the court addressed the distinction between the terms " 'merit principle' " and " 'merit system.' " (*Brown, supra*, 29 Cal.3d at p. 184, fn. 7.) The former was the concept of recruiting, selecting, and promoting public employees under conditions of political neutrality, equal opportunity, and competition based on merit. "Merit system" referred to the larger system of personnel management. (*Ibid.*) In *Brown,* the petitioners argued that since the Constitution used the term " 'general system based on merit,' " that the "merit system" as well as the "merit principle" was embodied in the constitutional provision. (*Ibid.*) The court disagreed. Although the terms had distinct meanings among knowledgeable experts in the field, there was no evidence the draftsmen of the 1934 provision understood this distinction. The court found the Constitution required only the merit principle, not a particular system. "[W]e think that the 1934 ballot argument makes it quite plain that the draftsmen of the provision intended only 'to prohibit appointment and promotion in State service except on the basis of merit,' and did not intend to engrave into the state Constitution every aspect of the then current civil service system." (*Ibid.*) Subject to the merit principle, "the constitutional provision left the Legislature with a 'free hand' to fashion 'laws relating to personnel administration for the best interests of the State.' " (*Id.* at p. 184.)

Nothing in the Constitution requires that all civil service rules apply to all public employees and nothing prohibits the Legislature from experimenting to treat certain employees under different rules, *provided the merit principle is not infringed.* There are situations under the civil service system in which

different rules are applied to certain public employees. In *Brown*, the court upheld the constitutionality of the State Employer-Employee Relations Act (SEERA), although it permitted certain civil service statutes to be superseded by a memorandum of understanding between the Governor and the exclusive employee representatives. (*Brown, supra*, 29 Cal.3d at pp. 181-196.) Nothing in the demonstration project statutes violates the general system requirement of article VII, section 1, subdivision (b) of the state Constitution.

## IV

CSEA contends the demonstration project statutes are an impermissible delegation of legislative authority. ■ It is well settled that legislative power, the power to change a law, cannot be delegated. (*Kugler v. Yocum* (1968) 69 Cal.2d 371, 375 [71 Cal.Rptr. 687, 445 P.2d 303].) The scope of the doctrine proscribing delegations of legislative power is limited by several principles. Legislative power may be delegated "if channeled by a sufficient standard." (*Id.* at p. 376.) "A related doctrine holds: 'The essentials of the legislative function are the determination and formulation of the legislative policy. Generally speaking, attainment of the ends, including how and by what means they are to be achieved, may constitutionally be left in the hands of others. The Legislature may, after declaring a policy and fixing a primary standard, confer upon executive or administrative officers the "power to fill up the details" by prescribing administrative rules and regulations to promote the purposes of the legislation and to carry it into effect . . . .' [Citation.]" (*Ibid.*)

The purpose of the doctrine against delegating legislative power is to ensure that the Legislature resolves the fundamental policy issues and that a grant of authority is accompanied by adequate safeguards to prevent its abuse. (*Kugler v. Yocum, supra*, 69 Cal.2d at p. 376.)

■ CSEA contends the delegation of authority to the Board was improper because the Legislature has failed to resolve the fundamental policy issue. CSEA argues the Legislature has failed to set policy and the only policy behind the demonstration projects is the vague one of "improving personnel practices." We disagree. The policy behind the statutes authorizing demonstration projects is to conduct demonstration projects to determine if a specified change in personnel management policies or procedures would result in improved management. The policy is to conduct experiments to find solutions to improving management. The Board does not determine what changes should be made in personnel practices; it only selects changes for demonstration projects and then reports if such changes resulted in improved management.

In *People v. Wright* (1982) 30 Cal.3d 705 [180 Cal.Rptr. 196, 639 P.2d 267], the Legislature first made the fundamental policy decision to change from a system of indeterminate sentencing to determinate sentences chosen from alternatives based on circumstances relating to the crime and the defendant. The Legislature then delegated to the Judicial Council the task of adopting rules establishing the circumstances for imposing upper or lower terms. The court found no improper delegation. (*Id.* at p. 713.)

Here, too, the Legislature has made the fundamental policy decision about conducting experiments to find ways to improve personnel practices. It has properly left to the Board the implementation of that policy.

CSEA contends the delegation was improper because the Board has unfettered discretion in approving demonstration projects. In *People's etc. L. Assn. v. Franchise Tax Bd.* (1952) 110 Cal.App.2d 696 [243 P.2d 902], the tax commissioner was given absolute discretion to select the locality upon which the tax rate would be based. This uncontrolled and unguided discretion was an unlawful attempt to delegate legislative power. (*Id.* at p. 700.) Here, by contrast, the Board's power is not so broad. While it may select the demonstration projects, the affected agency must agree. Further, there are safeguards.

Whether there are adequate safeguards is often the key in determining whether a delegation is improper. " 'The need is usually not for standards but for safeguards. . . . [T]he most perceptive courts are motivated much more by the degree of protection against arbitrariness than by the doctrine about standards . . . .' [Citation.]" (*Kugler v. Yocum, supra,* 69 Cal.2d at p. 381.)

Here, there are adequate safeguards. First, the demonstration projects must be conducted openly. Notice must be given of the proposed project to affected employees and the Legislature; written comments may be submitted and there must be public hearings. (Gov. Code, § 19602, subds. (b)-(e), (g), & (i).) This safeguard provides a check on the Board's power. At the very least, the notice requirements permit a challenge to the Board's actions. Second, the employees' rights are protected. "[U]pon termination of a demonstration project, employees included in such project shall be given all seniority and other rights which they would have had had they not been in a demonstration project." (Gov. Code, § 19607, subd. (b).) Third, the demonstration projects are limited in duration to five years. (Gov. Code, § 19603.) Finally, and most importantly, the demonstration project may not infringe upon or conflict with the merit principle. The constitutional provisions of the civil service system are protected. The statutes authorizing demonstration projects are not an improper delegation of legislative power.

V

CSEA contends the Board's waiver of certain civil service statutes and the adoption of replacement regulations infringes on the constitutional merit principle. The constitutional merit principle is "that appointments and promotions in state service be made solely on the basis of merit." (*Brown, supra*, 29 Cal.3d at pp. 183-184.) In *Brown*, the court addressed a constitutional challenge to SEERA, which permitted certain civil service statutes to be superseded by a memorandum of understanding between the Governor and the exclusive employee representatives. The challengers contended SEERA conflicted with the merit principle embodied in the California Constitution. In upholding SEERA, the court noted, "in designating the statutes that may be superseded by a memorandum of understanding without legislative approval, the Legislature excluded those statutes relating to classification, examination, appointment, or promotion, areas in which a potential conflict with the merit principle of employment would be most likely to occur." (*Id.* at p. 185.) The Board may waive statutes relating to classification, examination, appointment, and promotion in adopting demonstration projects. (Gov. Code, § 19600, subds. (a)-(c).) We must determine whether the potential for conflict with the merit principle has been realized.

A

In adopting the CMA and CSA projects, the Board waived Government Code section 18523, which defines "class." In its place, the Board adopted California Code of Regulations, title 2, section 549.5, which defines "class" as "a broadband class for which the same general title may be used to designate each position allocated to the class and which may include more than one specialty area within the same general field of work." The result of this change is that the 48 positions in the CMA went from 23 classes to five (CMA level I-V), while the number of classes in the CSA was reduced from 56 to nine (CSA level I-IX) for 389 positions.

CSEA asserts that the classification system is vital to civil service and an employee cannot be reclassified without an examination. (*Pinion v. State Personnel Board* (1938) 29 Cal.App.2d 314, 319-320 [84 P.2d 185]; *Allen v. State Board of Equalization* (1941) 43 Cal.App.2d 90 [110 P.2d 73].) CSEA argues the new system is so broad that it constitutes classification in name only.

In *Pinion* and *Allen*, employees who were performing work at a higher level than their assignments sought to be appointed to the higher classification. The courts refused. "If the appointing power could, by assigning duties

of a higher nature to an employee, and the State Personnel Board could, by classifying those duties to a higher class than that of the employee's original position, give to an employee a permanent civil service status, the entire fabric of the civil service system would fail. Promotion and appointments in civil service would then no longer be made 'exclusive under a general system based upon merit, efficiency and fitness as ascertained by competitive examination.' " (*Pinion v. State Personnel Board, supra,* 29 Cal.App.2d at p. 319; *Allen v. State Board of Equalization, supra,* 43 Cal.App.2d at pp. 93-94.)

In contrast, here, there is no attempt to reclassify an employee from one existing class to a higher existing class without an examination. Rather, several similar existing classes are consolidated. Nothing in the Constitution requires that the classification system remain static. As the *Brown* court noted, not every aspect of the current civil service system was engraved into the Constitution. (*Brown, supra,* 29 Cal.3d at p. 184, fn. 7.) As to matters other than the merit principle, the Legislature has a free hand to fashion laws. (*Id.* at p. 184.) In changing the scope of the classifications, the Board acted within its constitutional authority to prescribe classifications. (Cal. Const., art. VII, § 3, subd. (a).)

B

The Board also waived Government Code sections 18930.5, 19054.1 and 19057.2, all relating to the examination process. The Board adopted California Code of Regulations, title 2, section 549.6, which permitted open and promotional examinations to be conducted pursuant to the procedures established for career executive assignment. Among these procedures is the following regulation:

"Examinations for appointment to Career Executive Assignment positions shall be competitive and of such character as fairly to test and determine the qualifications, fitness and ability of competitors actually to perform the duties of the position to be filled. Examinations may be assembled or unassembled, written or oral, or in the form of a demonstration of skill, or any combination of these; and an investigation of character, personality, education and experience and any tests of intelligence, capacity, technical knowledge, manual skills, or physical fitness which the appointing power subject to the approval of the executive officer deems are appropriate, may be employed.

"It is the purpose of this selection system to provide examination options that are particularly suited to fill efficiently each vacant position. Examination results need not be expressed in specific ratings of individuals. The

person appointed as a result of a competitive examination must be well qualified and carefully selected. The appointing power is required to promulgate the qualifications that will be used as standards in conducting the examination but is not required to distinguish between groups or individuals as to who is qualified or not qualified or as to relative level of qualification. Examinations may range from (1) a review of applications from which a selection is made, to (2) the use of supplemental applications, appraisal of performance and executive potential, management exercises and/or structured interviews." (Cal. Code Regs., tit. 2, § 548.40.)

Both Alexander and CSEA contend that utilizing this procedure for examinations violates the merit principle. In particular, they challenge the portions of the regulation that provide: "Examination results need not be expressed in specific ratings of individuals" and that the appointing power "is not required to distinguish between groups of individuals as to who is qualified or nor qualified or as to relative level of qualification." They contend that in order to make appointments and promotions "based on merit ascertained by competitive examination" (Cal. Const., art. VII, § 1, subd. (b)), the various candidates must be compared and ranked. In response, the Board argues the selection of the successful candidate must be made on the basis of merit, but that neither ranking nor a comparison of candidates is required.[2]

The state Constitution requires a competitive examination; this examination is the basis for ascertaining merit. (Cal. Const., art. VII, § 1, subd. (b).) Thus, the competitive examination is at the heart of the merit principle.

The nature of a competitive examination was discussed recently in *Kidd v. State of California, supra*, 62 Cal.App.4th 386. At issue was an affirmative action program, the Board's policy of "supplemental certification," that allowed certain minority and female applicants to be considered for state positions even though they did not place among the top three ranks. This court found the supplemental certification program violated the merit principle because it allowed the use of nonmerit factors, race and sex, in the appointment process. (*Id.* at pp. 401-402.) We rejected the argument that the

---

[2]CSEA argues the Board's current position on the requirements of a competitive examination is a change from its previous position. In support of this argument, CSEA requests this court take judicial notice of a Board resolution invalidating employment lists that were not established in compliance with the requirements of a competitive examination. We grant the request for judicial notice. (Evid. Code, § 452, subd. (c).) Given our conclusion that a competitive examination requires a comparison of candidates, we need not address whether the Board has changed its position. To the extent the Board adopts a position that a comparison of candidates is not required, such position conflicts with the merit principle and cannot be implemented.

Board had discretion to appoint to a state job anyone who passed the examination. "In short, the Board would define merit as nothing more than receiving a passing score on the examination, completely ignoring the fact the examination is to be competitive. Yet, to disregard rankings renders the examination noncompetitive, emasculating the merit principle. Article VII, section 1, subdivision (b) of the state Constitution states that selection to the civil service shall be based on merit and that merit is to be ascertained by competitive examination. The notion that defendants can hire any applicant who passes an examination without consideration of that applicant's standing in relation to others who passed the examination reads the word 'competitive' out of the state Constitution." (*Id.* at p. 402.)

The Board contends *Kidd* is distinguishable because in that case, merit was first ascertained by examination and then disregarded in favor of other, nonmerit, factors. It is true that *Kidd* condemned the use of nonmerit factors and the regulation at issue does not purport to authorize selection on any basis other than merit. Nonetheless, *Kidd*'s discussion that the essential nature of a competitive examination requires consideration of the applicant's standing in relation to others holds true in any context. "In a competitive examination, the candidates match their qualifications each against the others, and the final determination is made by rating and comparison." (*State v. Emmons* (1934) 128 Ohio 216 [190 N.E. 468, 471], quoted in *Almassy v. L. A. County Civil Service Com.* (1949) 34 Cal.2d 387, 398 [210 P.2d 503].) In *Almassy*, the oral interview was found to be a competitive examination. "[T]he candidates for the positions here in question were all tested by oral interviews for the same personality factors—each candidate was pitting his personality traits against those of every other candidate incident to the examiner's process of making comparative evaluations—so that the ratings in consequence of such 'open' contest may properly be said to rest on a competitive basis." (34 Cal.2d at p. 398.)

We reject the Board's contention that the Constitution does not require ratings and comparison. ■ "[T]he cornerstone of the constitutional merit principle is a competitive examination process that determines merit, effectiveness and fitness for appointment and promotion. [Citations.]" (*Lund v. California State Employees Assn.* (1990) 222 Cal.App.3d 174, 186 [271 Cal.Rptr. 425].) The word "competitive" denotes a rivalry, contending with others. It encompasses a comparison of relative merit. We recognize the merit principle does not require that the most qualified or best candidate be chosen. Under the rule of three ranks (Gov. Code, § 19057.1), those in the top three ranks may be considered for appointment. Thus, the rule of three ranks is designed to safeguard the merit principle by assuring that one of the better candidates, if not the best, will be chosen. (*Kidd v. State of California,*

*supra*, 62 Cal.App.4th at p. 404.) Other procedures for selecting one of the better candidates could be adopted, but such procedure must require a comparison of the candidates.

The Board argues Alexander and CSEA have failed "to establish that the Board's regulation addresses the examination process rather than merely the expression of the results of the examination." The Board thus suggests the regulation can be read to speak only to the formal expression of the results of the examination, not the process by which merit is determined. The portion that reads, "Examination results need not be expressed in specific ratings of individuals," could be so narrowly construed. But the regulation goes further; it also relieves the appointing power of the obligation "to distinguish between groups or individuals as to who is qualified or not qualified or as to relative level of qualification." (Cal. Code Regs., tit. 2, § 548.40.) This relief is not limited to the formal expression of the results. Rather, it permits selection of a candidate without distinguishing among the candidates as to qualifications.

A competitive examination requires consideration of the applicant's standing in relation to others, even if not announced. We cannot read the regulation so narrowly as to relieve the appointing power of only the necessity of publishing or otherwise making public the results of the examination. In not requiring that examination results be expressed in ratings or that applicants be distinguished as to qualification or relative level of qualification, the regulation relieves the appointing power of any obligation to rank and compare applicants. As we read it, the regulation requires that a test be given, but the test need not be graded. It is the process of grading the test, that is, ranking and comparing the applicants, by which merit is ascertained. It is this process "that determines merit, effectiveness and fitness for appointment and promotion." (*Lund v. California State Employees Assn., supra*, 222 Cal.App.3d at p. 186.) It is this process that the merit principle requires.[3] Because the regulation, while requiring a competitive examination, dispenses with this essential process, it is invalid.

The judgment is modified to invalidate section 548.40 of title 2 of the California Code of Regulations and to invalidate section 549.6 of the same

---

[3]The Board can conduct demonstration projects, waiving the civil service statutes relating to examinations, without violating the merit principle. For example, in adopting regulations for the demonstration project of managerial selection and classification consolidation and broadbanding, the Board permits each participating department to develop its own examination, but requires that "[e]very examination will be conducted by comparing each candidate's knowledge, skills, and abilities against those listed in the class specification, the individual position description for the specific position being filled, and with all other candidates in the examination." (Cal. Code Regs., tit. 2, former § 549.61, subd. (e).) Further, each department is required to maintain an examination file that contains the evaluation criteria and selection procedures and documentation on how those criteria were applied. (*Id.*, subd. (g).) These provisions maintain the comparison of candidates that is required by the merit principle.

to the extent it permits the examination to be conducted pursuant to section 548.40. In all other respects, the judgment is affirmed.

Blease, Acting P. J., and Nicholson, J., concurred.